23   103
d23   507

# SAMUEL H. AUERBACH, Respondent, v. SALT LAKE COUNTY, Appellant.

STATUTE—MUST BE STRICTLY PURSUED—BY COUNTY COURT—LIABILITY OF COUNTY—COUNTY WARRANTS—ACTION ON—EVIDENCE—RESCISSION OF CONTRACT—BY COUNTY—REQUISITES—COUNTY LIABILITY ON WARRANT—DELIVERY OF GOODS—SUBSEQUENT WARRANTS—EQUITIES OF WARRANT HOLDERS—CLAIM AGAINST COUNTY—PRESENTMENT FOR PAYMENT—BEFORE SUIT—NOT REQUIRED.

1.  STATUTE: MUST BE STRICTLY PURSUED: BY COUNTY COURT: LIABILITY OF COUNTY.  A county court or board of county commissioners being wholly a creature of statute, when the statute is not strictly pursued, the acts of such court or board are void, and without force or effect; but it does not follow, that, under no circumstances, can a

liability be created when the statute is not in all respects pursued, or when some members of the court or board are guilty of fraud with reference to some part of a transaction.

2. COUNTY WARRANTS: ACTION ON: EVIDENCE. In an action on a county warrant defended against on the ground of fraud and failure of consideration in its inception, the minutes of the court showing the proceedings at the time the warrant was authorized, and a bond received by the court to insure the delivery of the goods, in payment for which the warrant was issued, are properly admitted in evidence as tending to throw light on the entire transaction.

3. RESCISSION OF CONTRACT: BY COUNTY: REQUISITES. A county, although having the power to rescind and refuse to pay a contract created for it in fraud, can not be permitted, after it has had sufficient opportunity to rescind and has not done so, to retain the goods, and at the same time refuse to pay the fair market value therefor to the innocent holder of a warrant.

4. COUNTY: LIABILITY ON WARRANT: DELIVERY OF GOODS: SUBSEQUENT WARRANTS: EQUITIES OF WARRANT HOLDERS. In the absence of rescission, the liability of the county became complete, for the claim represented by the warrant, it being the first one issued, the moment goods have been delivered and accepted of the fair market value of the face of the warrant; and it being admitted that goods of a greater value than the face of the warrant were delivered, accepted and ever since used, the maxim *qui prior est tempora potior est jure* controls, and holders of subsequent warrants must be presumed to have had notice of the prior claims for which the warrant in dispute was issued, as the facts in relation thereto were matters of record. And this even though the equities between all the holders are equal.[1]

5. CLAIM AGAINST COUNTY: PRESENTMENT FOR PAYMENT: BEFORE SUIT: NOT REQUIRED. There being no statute in this State which expressly prohibits the bringing of an action on a claim against a county before a duly itemized and verified statement has been presented to the board of county commissioners, an objection that the complaint does not allege the presentation and rejection of such a claim, being raised for the first time in this court, can not avail the defendant; such an objection being simply in abatement of the action, to have effect, must be urged by proper plea, or in some other appropriate manner in the trial court, or it will be regarded as waived.

[1]Board of Education v. Pressed Brick Co., 13 Utah 211.

Auerbach v. Salt Lake County.

Decided January 7, 1901.

Appeal from the Third District Court, Salt Lake County.—
*Hon. Ogden Hiles, Judge.*

Action to recover the amount of a county warrant issued
in payment of furniture alleged to have been purchased by
Salt Lake county. The answer denied the making of the con-
tract for the purchase of furniture and denied the delivery of
the warrant was pursuant to a valid contract, and alleged af-
firmatively a criminal conspiracy on the part of the payee in
the warrant and the three selectmen of Salt Lake county, under
whose authority the warrant was issued. From a judgment
for plaintiff, defendant appealed.

AFFIRMED.

*Graham F. Putnam, Esq., Ray Van Cott, Esq.,* and
*W. T. Gunter, Esq.,* for appellant.

Public corporations are creatures of statute, with limited
powers, which can only be exercised in the manner prescribed
by the statute; and all persons dealing with them are bound
to take notice of the extent and limits of their powers. Litch-
field v. Ballon, 114 U. S. 190; Thomas v. Richmond, 12 Wall.
349; Dickinson v. Poughkeepsie, 75 N. Y. 65; McDonald
v. Mayor, 68 N. Y. 23; Murphy v. Louisville, 72 Ky. 189;
Supervisors v. Arrighi, 54 Miss. 668; Bank v. Township, 44
N. W. 1002; Bank v. School Dist. 48 N. W. 363, 367;
Mullaly v. Mayor, 3 Hun. 665, aff. 62 N. Y. 636; Smith v.
Albany, 61 N. Y. 444; Trustees v. Holm, 82 Ky. 4; People
v. Township Board, 11 Mich. 222; Milford v. Water Co.,
3 L. R. A. 122; Honaker v. Board of Education, 32 L. R.

A. 415; Webster Co. v. Taylor, 19 Iowa 119; Shirk v. Pulaski Co., 4 Dillon 213; Boyd v. Township, 24 N. E. 661; Wall v. Monroe Co., 103 U. S. 74; Bank v. Township, 44 N. W. 1002; Bank v. 'Township, 48 N. W. 663.

The statutes of Utah have for many years required that before an action can be maintained against a county, a claim duly verified and itemized must be presented to the county court, or the board of county commissioners, and rejected by them, and thereafter suit must be brought within a limited time, formerly six months and now one year. 1 C. L. 1888, pp. 307, 308; Rev. St., sec. 531, 533.

Statutes of this sort have been in force for many years in the United States, and have been with unanimity considered to be mandatory, and that a strict compliance with their conditions is a condition precedent to the right of recovery. This is in accordance with wise public policy that public corporations should not be harassed with suits and the money of the taxpayers dissipated in litigation, without an opportunity being first afforded them to investigate and pass upon the justice of all claims urged. Fenton v. Salt Lake County, 3 Utah 423; Rhoda v. Almeda County, 52 Cal. 350; 4 Enc. Pl. and Pr., 655, 658, and citations; Byron v. Water Commissioners, 41 Minn. 519; People v. Holliday, 25 Cal. 301; State v. Bank, 8 Neb. 218; State v. Stout, 7 Neb. 89; St. Louis v. Cruikshank, 16 Mo. App. 495; Hawser v. Melcher, 40 Mich. 185; Reining v. Grant, 38 Neb. 369; Koch v. Ashland, 83 Wis. 361; Olmstead v. Pound Ridge, 71 Hun. 25; Yavapai Co. v. O'Neil (Ariz.), 29 Pac. 430; State v. Com'rs, 26 Ohio St. 364.

The rule is that the party defrauded must tender back the specific thing purchased or its equivalent in amount, quality and kind. Unless he can do this, he cannot maintain an action to rescind the sale. Smith v. Brittenham, 109 Ill. 540.

We urge that as so far as this question of interest is con-
cerned, this action is one for unliquidated damages. There
has never been a time since the issuance of the warrants and
the delivery of the furniture in 1894, when it has been pos-
sible for this defendant to ascertain what or whom it should
pay for this furniture. 1 Sutherland on Damages, sec. 347;
Shipman v. State, 44 Wis. 458; Hawley v. Dawson, 16 Ore.
344, 348.

*Messrs. Dickson, Ellis & Ellis,* and *Messrs. Booth, Lee
& Ritchie* for respondent.

Plaintiffs became the equitable assignees of Andrews &
Company, and may recover in this action the value of the fur-
niture, whether the warrant was void or not. Bank v. Herald,
74 Cal. 607; 4 Dillon, p. 213-215; Dillon Municipal Corp.,
sec. 503; Harris v. Campbell, 2 Am. St. Rep. 467; Argenti v.
San Francisco, 16 Cal. 264-284.

It is admitted that this warrant was the first warrant
issued for any of the furniture delivered by Andrews & Com-
pany to the county and was the first one assigned, the first pre-
sented for payment, the first registered, the first of the assign-
ment of which the county first received notice, and plaintiff
being first in time, is first in right, and his warrant must be
first paid, whether his recovery is upon the warrant as such or
upon the second count. Price v. Elmbank, 72 Fed. Rep. 610;
In re Gillespie, 15 Fed. Rep. 735; Spain v. Hamilton, Adm.,
1 Wall. 604; 38 Cal. 518-522; Hudson v. Corcoran, 17 How.
612-615; Board of Education v. Pressed Brick Co., 13 Utah
224, and cases cited; Hopkins v. Page, 2 Brock. 20-41; Field v.
Mayor, 57 Am. Dec. 435-42 (6 N. Y. 179;) 2 Pom. Eq.,
693-696, and note; In re Maska Coal Co., 64 N. W. 405;
Clark on Contracts (Hornbook Series), p. 538; Harris county
v. Campbell, 68 T. 22; 2 Am. St. Rep. 467.

If this court shall hold that the contract of June 19, 1894, was void, still the judgment must stand; it would, indeed, be a reproach to the law if the county could retain another's property, and use it and claim it, and not render an equivalent. Dillon Municipal Corporations (4 Ed.) sec. 460; 16 Cal. 283, 284.

### STATEMENT OF FACTS.

This is an action to recover $15,000, a sum represented by a county warrant drawn in favor of A. H. Andrews & Company, and by that company sold and transferred to the firm of F. Auerbach & Brother, of which firm the plaintiff is the surviving partner, and engaged in winding up the affairs of the co-partnership. The complaint has two counts. The first, in substance, alleges that the warrant was issued June 19, 1894, pursuant to a contract previously made between Andrews & Company and the county of Salt Lake for the sale to the county of furniture for the city and county building; that the warrant was a partial payment for said furniture, which was delivered and was of much greater value than the amount of the warrant; that the warrant was duly transferred to Auerbach & Brother; was presented for payment, and registered by the county treasurer, and payment refused, although ever since November 10, 1896, there have been sufficient funds in the treasury for and applicable to the payment of the warrant, and that the same still remains wholly unpaid.

The second count alleges that on June 19, 1894, the county court of Salt Lake county made a contract with Andrews & Company for the purchase from them of furniture to the value of $15,000; that defendant in payment of the furniture issued the warrant sued on; that the furniture was delivered under the contract, and was received and accepted by the county,

and was of greater value than the $15,000. The allegations respecting the transfer of the warrant, its presentation for payment, registration, refusal of payment, funds in treasury and the amount being unpaid, are the same as in the first count.

The defendant's answer admits the execution and delivery of the warrant, its purchase by the plaintiff, its presentation, registration, and non-payment, but denies the making of the . contract for the purchase of the furniture, and that its delivery was pursuant to valid contracts between the county and Andrews & Company.

As an affirmative defense, it is, in substance, alleged, that in 1894, the three selectmen of Salt Lake county, and the probate judge, constituted the county court; that prior to March 6 of that year, the selectmen entered into a criminal conspiracy with A. H. Andrews & Company, a Chicago furniture house, acting through their agent, Martin Hayken, to defraud Salt Lake county, by contracting to buy from said Andrews & Company large quantities of furniture and fixtures, for the county's part of the joint city and county building, at prices corruptly enhanced with the knowledge of the selectmen, and fixed by Hayken at such sums that the whole amount charged was more than double the actual market value of the goods; that the selectmen were to be paid by Andrews & Company twenty-five per cent of the gross amount of the contracts; that, pursuant to this conspiracy, the three selectmen, on March 6, 1894, signed a contract for the purchase by the county from Andrews & Company of furniture, in quantity, kind and prices specified and described in the contract and an accompanying schedule, at a stipulated price of $34,000 in county warrants; that this furniture was for the various county offices; that subsequently on . May 7, 1894, the same parties signed a similar contract and schedule for the purchase from Andrews & Company of other furniture for the court rooms, district clerk's office, jury

rooms, etc., at the price of $20,973.85, in county warrants, that these contracts were signed in Hayken's rooms at the Knutsford Hotel, and neither was authorized by the county court, nor in any any way referred to in its minutes, excepting in an indemnity bond of June 19, 1894; that the first contract was filed with the county clerk March 21, and the second on December 20, 1894, two days before the selectmen went out of office; that no bids were received, nor competition invited for the supplying of this furniture; that in pursuance of the agreement for bribery, money was paid by Andrews & Company, through Hayken, to Joseph R. Morris, one of the selectmen, in various sums aggregating $5,000; that Andrews & Company, between July 25 and December 31, 1894, delivered to the county and set up in the county building a large quantity of furniture and fixtures, but its total actual market value was only $27,000; that the county court in 1894, the three selectmen participating, issued warrants to Andrews & Company in the sums of $54,973.85, the total price named in the contracts; that the warrant sued on, issued June 15, for $15,000, was the first of the series; that all of the warrants were issued as part of one corrupt and fraudulent transaction, and in pursuance of the bribery conspiracy, and were received, by Andrews & Company fraudulently, and with full knowledge of all the facts; and that all of them have been transferred, by Andrews & Company to different parties.

The defendant's counterclaim sets up substantially the same facts as the answer, and prays judgment that the defendant be entitled to deduct from any judgment that plaintiff may recover the sum of $7,640, being such proportion of the damages suffered by reason of the fraud, which damages were alleged to be $28,000, as plaintiff's warrant of $15,000 bore to the sum total of warrants issued.

By way of answer to the counterclaim, after denying all its material allegations, plaintiff alleged that, on June 19, 1894, after the contracts had been entered into, Andrews & Company had completed and were ready to deliver to the county a portion of the furniture largely in excess of $15,000 in value, but the county was not ready to receive it by reason of the unfinished condition of the building; that Andrews & Company desired a partial payment on their contracts, and at a regular meeting of the county court, at which the probate judge, and the three selectmen were present, a resolution was adopted which authorized the issuance, to Andrews & Company, of the warrant for $15,000, as the first payment on the contracts, upon certain terms and conditions, as is averred, independently and outside of any of the terms or specifications of the said contracts, and upon the delivery to the county clerk of an indemnity bond executed by Andrews & Company and three sureties, in which they guaranteed to the county the performance, by Andrews & Company, of their part of the contract of March 6, to the value of $15,000 in the specifications or schedules thereof; that the warrant sued on was thereupon issued and delivered to Andrews & Company, under the resolution, and was purchased for $14,700 by Auerbach & Brother, in good faith, and relying upon the proceedings of the court and the execution and delivery of the bond; that the furniture was subsequently delivered to and accepted and used by the county, and never has been returned or offered to Andrews & Company; that the counterclaim was barred by the statute of limitations; that the county court on June 21, 1895, passed a resolution repudiating the furniture warrants, and later, on September 9, 1895, rescinded the resolution, relying upon which plaintiff took no steps to collect his warrant from the insolvent estate of Andrews & Company, upon their failure in October, 1895, that fifty per cent of its claims could have been recovered from such insolvent

estate; that defendant was estopped because it had not set up facts showing failure of consideration in its original answer to plaintiff's complaint, filed immediately after the action was brought, by reason of which plaintiff had been delayed and had lost an opportunity to procure testimony, etc.; and that because of the laches of the defendant in alleging failure of consideration, the plaintiff is unable to fully meet such allegations on account of the death of witnesses who were familiar with the facts.

The cause was tried before the court without a jury. From the evidence, the court, in substance, and so far as material here, found that the selectmen and the probate judge constituted the county court; that the selectmen, without authority from the county court, and without advertising for or receiving bids for the furniture, made the contracts of March and May with Hayken acting for A. H. Andrews & Company; that the contracts were the result of a previous corrupt agreement entered into by some of the selectmen in consideration of a bribe to be paid them; that the bribe was paid; that this payment influenced the action and conduct of some of the selectmen in the making of the contracts, and the acceptance of the furniture delivered thereunder; that on June 19, 1894, the county court at a regular meeting, all members being present, passed a resolution, by unanimous vote, authorizing the issuing of the warrant sued on, upon the filing, by Andrews & Company, of an indemnity bond; that such bond was filed; that when the warrant was issued no furniture had been delivered, and no itemized claim had been filed as provided by statute; that the warrant in question was issued pursuant to the resolution of June 17, and was the first one issued in payment of the furniture and presented for payment and registration, and that Auerbach & Brother paid $14,700 for the warrant, and bought with knowledge of the facts, but in ignorance of the bribery and fraud,

and the plaintiff is now the owner and holder of the warrant; that Andrews & Company delivered the furniture and set it up in the city and county building between July and December, 1894, that it was worth $27,000, and no more; that the warrants issued in payment therefor were, by Andrews & Company, sold and transferred to divers parties; that the selectmen referred to went out of office January 1, 1895, and were succeeded by others who had reason to believe that the contracts were void by reason of fraud and bribery, and became convinced by February 15, 1895, that they were fraudulent and void, and at that time determined to contest the payment of the warrants, but also elected to retain and use the furniture; that on June 22, 1895, they passed a resolution repudiating all the warrants as void, and directing the county treasurer not to pay them, but at no time offered to return the furniture, or pay its value, or pay to plaintiff $14,700, paid by his firm to Andrews & Company for the warrant.

These findings of fact seem to be supported by the proof.

As conclusions of law the court found that all the warrants are void; that the county was not liable thereon; that the defendant's counterclaim for damages should be dismissed; that it was the duty of the county, on discovering the fraud, to have returned or offered to return the furniture, or have paid its value to Andrews & Company, or plaintiff, as the assignee of Andrews & Company, if the county elected to retain it; that Auerbach & Brother, by buying the warrants, became the equitable assignee of any claim that Andrews & Company might have to recover from the county the fair value of the furniture, to the extent of $14,700, the price paid for the warrant; and being first in time in acquisition of such a claim, Auerbach & Brother were first in right, and were entitled to recover $14,700, with interest from February 15, 1895, at the legal rate.

Judgment was rendered accordingly, and this appeal challenges its correctness.

Having stated the case as above, BARTCH, C. J., delivered the opinion of the court.

The appellant insists that error was committed in rendering this judgment; that when the court found that the warrant in dispute was void, it followed that the judgment must be for the defendant; and that the only way a county can be made liable at all is expressly by contract made, and liability created, in the manner prescribed by statute; and that no liability as to a county can be implied.

It is true the county court was wholly a creature of statute and, that, as a general proposition, the acts of such a court, and of a board of county commissioners, are void and without force or effect, when the statute is not pursued. This is so well settled as to need no citation of authorities. It does not follow, however, that, under no circumstances, can a liability be created when the statute is not in all respects pursued, or when some of the members of the county court are guilty of fraud with reference to some part of a transaction. Conceding that the contracts of March and May, tainted not only with the most reprehensible but with criminal conduct and acts of some members of the county court, were void, still it is not a necessary sequence that, by subsequent proceedings and acts of that court, of which some of the members were acting in good faith, and were innocent of the fraud and corruption, in relation to the furniture—the same subject-matter of the fraudulent transaction, a liability, on the part of the county, could not be created in favor of an innocent holder of a warrant. We apprehend that the creation of such a liability by the court was possible notwithstanding the fraudulent contracts, to which some of the

members of the court were parties, and it, therefore, becomes important to look into the subsequent proceedings and acts of the county officers.

From the evidence it appears that at a meeting of the county court held on June 19, 1894, at which all the members were present, a resolution was adopted which reads: "Resolved that the county clerk be and he is hereby directed to draw a warrant in favor of A. H. Andrews & Company of Chicago, for the sum of $15,000 and deliver the same to M. Hayken, as agent of said A. H. Andrews & Company, upon the execution and delivery to said clerk of the indemnity bond duly signed by the said A. H. Andrews & Company, as principal, and by Frank Knox, E. W. Duncan and G. S. Holmes, as sureties, and upon the filing by the said clerk, of the documentary authority of said Hayken to sign said bond on behalf of said A. H. Andrews & Company."

In accordance with this resolution, the undertaking therein mentioned was filed, and in the obligatory part thereof, it was stated: "Now, therefore, if the said A. H. Andrews & Company shall at their own expense and risk transport to and deliver in the said building the said furniture, fittings and appliances mentioned and specified in the said contract, to the value of $15,000, in the specifications or schedules therein referred to, and set up the same in said building as required in said contract as soon as they or their agent shall be notified so to do by the architect of said building, or the county court of said county, and shall in all respects perform all the things in said contract required and stipulated to be by them performed, to the value of $15,000, then this obligation shall be void; otherwise to remain in full force and effect."

Notwithstanding the fact that the minutes of the court, showing the passage of this resolution, and the bond, were introduced in evidence over the objections of the appellant, we are of

the opinion that, under the pleadings, they were properly ad-
mitted, as tending to throw light on the whole transaction, and
to show what steps were taken to secure the delivery of the fur-
niture, which, the evidence shows, had been completed and was
ready for shipment.    Whether this action of the county court,
and the compliance therewith by Andrews & Company created
a valid contract, and whether it authorized the issuance of the
warrant, or whether the warrant issued in pursuance thereof is
absolutely void, are questions which, from the view we have
taken of the case, we do not deem important or necessary to
decide.    It is doubtless true and may be admitted that the ap-
pellant could have rescinded all these transactions, relating to
the purchase of the furniture, the last one included because the
resolution and bond refer to the former fraudulent contracts,
but it has not seen fit to do so.    On the contrary, it received and
accepted the furniture, pursuant to the contract of June 19,
had it set up in the city and county building, and ever since has
used and exercised ownership over the same, and has never
attempted to rescind the contract, or returned or offered to re-
turn the furniture, or paid or offered to pay to Andrews & Com-
pany, or Auerbach & Brother, or the plaintiff, who must be
regarded as the equitable assignee of Andrews & Company to
the extent of the amount paid for the warrant, any part of the
actual value of the furniture, although in its counterclaim the
defendant admits that the actual market value of the furniture
was $27,000, and simply asks for a deduction, from the amount
of plaintiff's claim, of $7,640, thereby admitting that the bal-
ance of the $15,000, at least, was due the plaintiff.    Even
after the change in the personnel of the county court, when the
same was composed of members, none of whom were parties to
the corrupt contracts of March and May, and after they had
discovered the fraud, no effort whatever was made to rescind the

contracts, or to return the goods, or pay the actual value there-
for.

Under such circumstances the defendant can not be per-
mitted to retain and use the goods, and at the same time refuse
to pay the fair market value therefor to an innocent holder of
a warrant.

In Argenti v. City of San Francisco, 16 Cal. 256, Mr. Jus-
tice COPE, delivering the opinion of the court said: "From
an examination of the authorities, it is evident that the doctrine
contended for by the counsel for the city can not be maintained.
The theory is, that a municipal corporation can only be bound
by a contract to which it has expressly assented, and that such
a corporation is exempt from the operation of the rules which
relate to and govern the contracts and liabilities of individuals.
We readily admit that the powers of a corporation are derived
solely from the act creating it; and that as a general rule, these
powers must be exercised in the particular mode pointed out by
the charter.   It does not follow, however, that even a want of
authority is, in all cases, a sufficient test of the exemption of a
corporation from liability in matters of contract."

In the same case, Mr. Justice FIELD, concurring in the
judgment announced by the court, said:   "If the city obtain the
money of another by mistake, or without authority of law, it is
her duty to refund it—not from any contract entered into by
her on the subject, but from the general obligation to do justice
which binds all persons, whether natural or artificial.   If the
city obtain other property which does not belong to her, it is her
duty to restore it; or if used by her, to render an equivalent to
the true owner, from the like general obligation.   In these
cases she does not, in fact, make any promise on the subject,
but the law, which always intends justice, implies one; and her
liability thus arising is said to be a liability on an implied con-
tract, and it is no answer to a claim resting upon a contract of

this nature to say that no ordinance has been passed on the subject, or that the liability of the city is void when it exceeds the limitation of $50,000 prescribed by the charter. The obligation resting upon her is imposed by the general law, and is independent of any ordinance and the restraining clauses of the charter. It would indeed be a reproach to the law, if the city could retain another's property because of the want of an ordinance, or withhold another's money because of her own excessive indebtedness. In reference to money, or other property, it is not difficult to determine, in any particular case, whether a liability with respect to the same has attached to the city. The money must have gone into her treasury, or been appropriated by her, and when it is property other than money it must have been used by her, or be under her control." 1 Dill. Mun. Corp. (4 Ed.), secs. 460, 461; McClure v. Jefferson, 85 Wis. 208.

The deduction above referred to, was doubtless asked on the theory that there are other warrant holders, and that the plaintiff should share a proportionate loss occasioned by the fraudulent excess charged for the furniture, as per the contracts of March and May. The answer to this is that it is admitted that the warrant in dispute was the first one issued for any of the furniture, the first presented for payment, and the first one registered. In the absence of a rescission of the contract, the liability of the county became complete, for the claim represented by the warrant, the moment furniture had been delivered and accepted of the fair market value of $15,000, and, as we have seen, it is admitted that $27,000 worth was delivered, accepted and ever since used by the county. All the holders of subsequent warrants must therefore be presumed to have had notice of the prior claims for which the warrant in dispute was issued, as the facts in relation thereto were matters of record. Under these circumstances the maxim, *qui prior*

*est tempore potior est jure,* controls.    This is so even though the equities between all the holders are equal.    2 Pom. Eq. Jur., secs. 693, 695 ; Board of Education v. Pressed Brick Co., 13 Utah 211; Price v. Elmbank, 72 Fed. Rep. 610; In re Gillespie, 15 Fed. Rep. 734; In re Mahaska Coal Co., 64 N. W. Rep. 405 ; Shirk v. Pulaski County, 4 Dill. 209.

The appellant further contends that, even if the respondent is entitled to recover the reasonable value of the goods, he can not recover in this action, because the complaint fails to allege that a claim duly itemized and verified, had been presented to the county court, or board of county commissioners, and by them rejected before suit was instituted.

This point, as appears, was made for the first time in the appellate court, and therefore, can not avail the appellant, there being no statute in this state which expressly prohibits the bringing of an action on any claim before it has been so presented and acted upon.    Such an objection simply goes in abatement of the action, and, to have effect, must be urged by proper plea, or in some appropriate manner in the trial court, or the objection will be regarded as waived.

In Jaquish v. The Town of Ithaca, 36 Wis. 108, where a similar question was raised, Mr. Justice LYON, speaking for the court, said:    "Without deciding whether the claim should have been presented for audit to the town board before an action upon it can be maintained, it is sufficient for the purposes of the case to say, that this objection, which is made for the first time in this court, comes too late to be available to the defendant.    Conceding the objection, if taken at the proper time, to be a valid one, it only goes in abatement of the action, and should have been made on the trial, either by motion for a nonsuit or in some other appropriate manner."    Gould on Pl., ch. 5, p. 284; Brown v. Cayuga & S. Ry. Co., 12 N. Y. 486.

We are of the opinion that, in the second count of the

complaint, the allegations, in the absence of any special plea attacking their sufficiency, can not be successfully assailed after judgment.

Nor do we think the appellant's objection to the allowance of interest from February, 1895, is well taken. The trial court found that the members of the county court "commenced an investigation with the result that, as early as February 15, 1895," they "became convinced" that the contracts were fraudulent and void and determined to contest the payment of the warrants issued thereunder, and "also elected to retain the furniture," and we can not say that there is no proof to support such finding, and therefore can not disturb it. Nor under these circumstances can we interfere with the allowance of interest from that date.

Other questions have been presented but from the view we have taken of the case, further discussion is not deemed important.

We find no reversible error in the record.

The judgment is affirmed, with costs.

*Miner* and *Baskin, JJ.*, concur.