**Harvey DALTON and Marilyn Dalton, Plaintiffs and Appellants,**

v.

**SALT LAKE SUBURBAN SANITARY DISTRICT, Defendant and Respondent.**

No. 17848.

Supreme Court of Utah.

Jan. 12, 1984.

Irving H. Biele, Brad R. Baldwin, Salt Lake City, for plaintiffs and appellants.

Frank G. Noel, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiffs brought this action against the defendant Salt Lake Suburban Sanitary

District to recover damages caused when a sewer line owned and operated by the Sanitary District became clogged, causing sewage and debris to back up and enter unoccupied dwellings owned by the plaintiffs. The action was based on negligence and breach of contract. The trial court dismissed both claims because the complaint was filed beyond the one-year statute of limitations provided for in U.C.A., 1953, § 63–30–15 (part of the Utah Governmental Immunity Act). The issue is whether that statute of limitations applies to either the negligence claim or the contract claim.

The damage occurred on August 10, 1979. Plaintiffs filed with the District a written notice of claim on November 8, 1979, itemizing the damage to their property. The claim was formally denied by the District's liability insurance carrier on January 4, 1980. Over a year later, on January 15, 1981, plaintiffs filed their complaint in this action. The District answered by asserting the one-year statute of limitations as an affirmative defense and moved for judgment on the pleadings pursuant to Rule 12(c), Utah Rules of Civil Procedure. The trial court granted the motion and dismissed both claims with prejudice.

■ We shall consider first the propriety of the dismissal of the contract claim. Section 63–30–15 provides:

> If the claim is denied, a claimant may institute an action in the district court against the governmental entity in those circumstances where immunity from suit has been waived as in this act provided. Said action must be commenced within one year after denial or the denial period as specified herein.

The District contends, and apparently the trial court concluded, that the plaintiffs should have filed their action within one year of January 4, 1980 when their claim was formally denied, and not having done so, their action was subject to dismissal. The difficulty with that contention is that § 63–30–5 provides that "actions arising out of contractual rights or obligations shall not be subject to the requirements of § 63–30–11, § 63–30–12, § 63–30–13 ...,"

which sections require the filing of a written notice of claim with the appropriate governmental entity. Thus, § 63–30–15 providing for a one-year statute of limitations running from the date of the denial of the claim obviously has no application to a contract claim which is not required to be filed, notwithstanding dicta in *Johnson v. Utah State Retirement Office*, Utah, 621 P.2d 1234 (1980), which could be construed to be to the contrary. Therefore, the contract portion of the action was not barred by the one-year statute of limitations and should not have been dismissed. The filing of a claim by the plaintiffs, although not required, does not alter the situation. The filing may be disregarded as surplusage.

■ Turning now to a consideration of the plaintiffs' negligence claim, while the instant case was pending on appeal in this Court, we decided *Thomas v. Clearfield City*, Utah, 642 P.2d 737 (1982), and held that the operation of a sewer system is not a governmental function under the definition of that term enunciated in *Standiford v. Salt Lake City*, Utah, 605 P.2d 1230 (1980). Thus the question is presented whether the one-year statute of limitations provided for in § 63–30–15 applies to a claim for damages arising from negligence by a governmental entity in its exercise of a nongovernmental function. At the outset it should be pointed out that the express language of § 63–30–15 limits the application of that section to actions brought against a governmental entity "in those circumstances where immunity from suit *has been waived as in this act provided.*" (Emphasis added.) Since the Governmental Immunity Act does not purport to waive immunity for injury or damages caused in the exercise of a nongovernmental function, it is obvious that this statute of limitations applies only to actions brought to recover for injury or damage arising from the operation of a governmental function, but where the Act waives immunity from suit and permits the action to be maintained.

This distinction is soundly based. Immunity never existed for injuries not arising

from the exercise of a governmental function and thus the Act did not purport to waive it, expressly or impliedly. In a long line of cases predating the 1965 enactment of the Act, this Court recognized that there was no immunity when the injury or damage complained of resulted from the exercise of a proprietary function. But when damage arose from a governmental function, a majority of the Court adamantly invoked immunity, despite the plea of two dissenting judges that we "judicially strike the ax at the very roots of this tree of governmental immunity grown from a bygone time." *Bingham v. Board of Education*, 118 Utah 582, 223 P.2d 432 (1950). Finally, in 1965, the Act came about as the result of studies by the Legislature and the legal community of this state which found that the harsh common law rule of immunity in which the state and its political subdivisions took refuge should be ameliorated in certain circumstances, even though the exercise of a governmental function was involved. Hence the Act reaffirmed in § 63–30–3 immunity when an entity was "engaged in the exercise and discharge of a governmental function" but carved waivers to that immunity in certain instances. Those waivers are contained in § 63–30–5 (contractual obligations), § 63–30–6 (claims involving property), § 63–30–7 (negligent operation of motor vehicles), § 63–30–8 (defective highways, bridges and other structures), § 63–30–9 (defective public building, structure or other public improvement), and § 63–30–10 (negligent act or omission of employee). But in those instances the strict procedures of the Act had to be followed such as the filing of a lawsuit within one year after denial of the claim. Conspicuously absent in the Act is any mention of liability for damage or injury arising from the exercise of a nongovernmental function or procedures to be followed in pursuing claims and actions arising therefrom. This is because the Act was not designed to, and did not address those instances in which governmental immunity had never existed. There was no problem in that area which necessitated legislative action.

We pointed out this critical distinction in *Greenhalgh v. Payson City*, Utah, 530 P.2d 799 (1975). We referred to the express wording of the Act which limits its application to instances when a governmental function is being exercised. Section 63–30–3 provides:

> Except as may be otherwise provided in this act, all governmental entities shall be immune from suit for any injury which may result from the activities of said entities wherein said entity is engaged in the exercise and discharge of a *governmental function*. [Emphasis added.]

This Court correctly observed in that case that had the Legislature intended to include proprietary function within the scope of the Act, it could have easily so indicated by omitting the limiting phrase "governmental function" appearing in § 63–30–3. In that case, it was held that because the operation of a hospital by the defendant Payson City was a proprietary function, the claimants did not have to comply with the procedural requirements of the Act. This same conclusion that the Act does not apply to cases arising from the exercise of a proprietary function was arrived at in Creer, *The Utah Governmental Immunity Act: An Analysis*, 1967 Utah L.Rev., 120 at 127–128. Section 63–30–15 is consistent with § 63–30–3 by specifically limiting its application to actions "where immunity from suit has been waived as in this Act provided," which are actions arising from the exercise of a governmental function. Section 63–30–15 was amended in 1983 while this appeal was pending, but the Legislature made no change in its limiting language except for technical word changes.

In this respect, nongovernmental claims are similar to equitable claims. In *El Rancho Enterprises, Inc. v. Murray City*, Utah, 565 P.2d 778 (1977), this Court, following *Auerbach v. Salt Lake County*, 23 Utah 103, 63 P. 907 (1901), and *Wall v. Salt Lake City*, 50 Utah 593, 168 P. 766 (1917), held that where the claims of the plaintiff are for equitable relief, there was not and never had been any governmental immuni-

ty and the requirements of notice of claim imposed by the Governmental Immunity Act did not apply. See *Jenkins v. Swan*, Utah, 675 P.2d 1145 (1983), for reaffirmation of this principle.

Our conclusion in this case is not in conflict with *Standiford v. Salt Lake City*, supra, which redefined governmental functions by narrowing their definition for the purposes of the Governmental Immunity Act. However, the distinction between the two types of claims was clearly preserved and no suggestion was made in that case that the Act dealt with the nongovernmental type. More recently, *Madsen v. Borthick*, Utah, 658 P.2d 627 (1983), involved the exercise of a governmental function (examination of financial institutions) and the notice requirement of the Act was held to apply.

The order dismissing the plaintiffs' complaint is vacated and the case is remanded to the trial court for further proceedings.

HALL, C.J., and DURHAM, J., concur.

OAKS, Justice (concurring and dissenting):

I concur in the result and reasoning of the majority's holding that the contract claim should not have been dismissed. But the order dismissing the negligence claim under the period of limitation specified in U.C.A., 1953, § 63–30–15 was correct, and I dissent from its reversal.

The *result* of the majority's holding is unfortunate because it means that different periods of limitation and different procedures will apply to claims based on nongovernmental functions than to claims based on governmental functions. Since the line separating those types of functions is sometimes unclear, these differences will complicate the filing, administration, and litigation of claims. I believe the Governmental Immunity Act was intended to provide one integrated procedural scheme for all noncontractual actions against governmental entities.[1] (Contractual actions are specifically excepted from the Act in § 63–30–5.) The majority's holding frustrates this intent.

The majority's *reasoning* is unfortunate because it casts doubt upon the rationale of a succession of recent cases defining a new direction in the interpretation of our Governmental Immunity Act and our law of sovereign immunity. The majority reasons that the one-year limitation is inapplicable to claims based on negligent performance of a nongovernmental function because § 63–30–15 only applies, by its terms, "where immunity from suit has been waived as in this Act provided."[2] The majority apparently reads the quoted language to refer only to those *express* waivers of immunity pertaining to governmental functions in §§ 63–30–5 through –10. But this Court has repeatedly held in recent cases that the Governmental Immunity Act also *impliedly* waives immunity as to injuries inflicted during the performance of nongovernmental functions.

Thus, in *Johnson v. Salt Lake City Corp.*, Utah, 629 P.2d 432 (1981), we interpreted the leading case of *Standiford v. Salt Lake City Corp.*, Utah, 605 P.2d 1230 (1980), as holding that § 63–30–3 means not only that governmental entities are immune from suit for injuries resulting from the exercise of a governmental function, but also (as in *Johnson* ) "that ... such entities are not immune from suit for an injury which does not result 'from the exercise of a governmental function.' " 629 P.2d at 433. Similarly, in our unanimous opinion in *Madsen v. Borthick*, Utah, 658 P.2d 627, 629–30 (1983), we concluded as follows:

It is evident from the text of the Utah Governmental Immunity Act, as inter-

---

**1.** This interpretation is confirmed by the recent statutory amendment deleting the words "under this act" from § 63–30–11 in an apparent attempt to insure that the notice requirement applies to all injury actions against governmental entities. (*See* § 63–30–11, 1983 Interim Supp.)

**2.** In 1983, § 63–30–15 was amended to read "in which immunity from suit has been waived in this chapter."

preted in *Standiford* and *Johnson,* that this legislation significantly altered the common law of sovereign immunity, and substituted a statutory framework to be interpreted by the courts and reshaped by the Legislature as necessary from time to time. *Under that framework, the right to maintain an action against the state or its political subdivisions can result (1) from a finding that the injury did not result from the exercise of a governmental function,* or (2) from a finding that even though the injury resulted from the exercise of a governmental function, the government's immunity has been *expressly* waived in one of the sections of the Act.

(Emphasis added; footnote omitted.)

In place of the foregoing reasoning, the majority relies on "a long line of cases predating the 1965 enactment of the Act," and on *Greenhalgh v. Payson City,* Utah, 530 P.2d 799 (1975). The reasoning in pre-Act cases is automatically suspect. In addition, as we noted in *Standiford,* the holding in *Greenhalgh* has now been "legislatively overruled," 605 P.2d at 1232 n. 1, and its references to proprietary functions are outdated. Commencing in *Standiford,* continuing in *Johnson* and *Thomas v. Clearfield City,* Utah, 642 P.2d 737, 738 (1982), and most recently in *Madsen v. Borthick,* we have stated that the distinction between governmental and proprietary functions was totally abandoned in the new Governmental Immunity Act "to escape the inevitable chaos that had resulted from trying to apply a rule of law based on a distinction that was inherently unsound and unworkable." 658 P.2d at 630, quoting *Johnson,* 629 P.2d at 433. Having abandoned that discredited body of law in favor of drawing new lines under the heading of "governmental vs. nongovernmental," we ought to forego any reliance on cases employing the "proprietary" distinction.

In short, I believe the majority's refusal to apply the Governmental Immunity Act's limitations period to injuries resulting from a nongovernmental function is unfortunate

for both its result and its reasoning. I dissent.

STEWART, J., concurs in the concurring and dissenting opinion of OAKS, J.