AMERICAN TIERRA CORP., Covecrest Properties, Brighton Builders, Inc., Arnold Development Co., and R & D Engineers, Inc., Plaintiffs and Appellants,

v.

CITY OF WEST JORDAN, Defendant and Appellee.

No. 900186.

Supreme Court of Utah.

May 5, 1992.

Rehearing Denied June 2, 1992.

Robert J. DeBry, Murray, for American Tierra Corp., Arnold Development Corp., Brighton Builders, R & D Engineers.

Wallace R. Bennett, Salt Lake City, for American Tierra Corp.

Melvin S. Martin, Salt Lake City, for Covecrest Properties.

Stephen G. Homer, West Jordan, for City of West Jordan.

DURHAM, Justice:

Plaintiffs American Tierra Corporation, Arnold Development Co., Brighton Builders, Inc., R & D Engineers, Inc., and Covecrest Properties (collectively "the subdividers") appeal from the trial court's grant of partial summary judgment in favor of defendant City of West Jordan.

This action is part of a second generation of litigation arising from a series of cases decided in *Call v. City of West Jordan*, 606 P.2d 217 (Utah 1979) (*Call I*), on rehearing, 614 P.2d 1257 (Utah 1980) (*Call II*), following remand, 727 P.2d 180 (Utah 1986) (*Call III*), following remand, 788 P.2d 1049 (Utah Ct.App.1990) (*Call IV*), cert. denied, 800 P.2d 1105 (Utah 1990). The cases arise out of a 1975 amendment to West Jordan's ordinance No. 33. The amendment required subdividers to dedicate seven percent of their land to West Jordan or, at the option of the city, pay the equivalent value as an impact fee to be used for flood control and/or parks and recreation facilities. West Jordan, Utah, Ordinance 33, § 9–C–8(a) (1975).[1]

In November 1977, an attorney from the offices of Robert J. DeBry sent a letter to the West Jordan mayor and city council on behalf of two subdividers, John Call and Clark Jenkins, and "all others similarly situated who have been required to dedicate land or pay cash to the City of West Jordan" under ordinance No. 33. The letter demanded that "all such land and/or cash be returned" because the ordinance is invalid. Failing such a return, the letter stated, "Mr. Call and Mr. Jenkins have

authorized [DeBry's] office to file a class action lawsuit for the return of such land and/or cash." West Jordan received the letter but declined to return the cash and property.

On February 7, 1978, DeBry's office filed a class action complaint in district court against West Jordan for the return of the impact fees. The complaint asserted that ordinance No. 33 was invalid and designated the class as "all persons, partnerships, businesses, and corporations which have, or will be required, to either dedicate seven percent (7%) of the land area of their proposed subdivision, or the equivalent value in cash to [West Jordan] in accordance with Ordinance No. 33." In April 1978, the district court denied class certification. In 1986, after a series of proceedings including appeals to and remands from this court, we declared ordinance No. 33 invalid and void *ab initio* and upheld the trial court's denial of class action status. *Call III*, 727 P.2d at 183–84. Subsequently, on November 5, 1987, the trial court awarded Call and Jenkins judgment for a refund of their impact fees plus interest. That judgment was not disturbed by the Utah Court of Appeals in *Call IV*, 788 P.2d at 1050–51.

Between 1975 and 1978, the individual plaintiffs in the present action paid the fees for which they now seek a refund. On November 24, 1987, American Tierra Corporation, Arnold Development Company, Covecrest Properties, and Brighton Builders, Inc., each filed a complaint in district court alleging that because ordinance No. 33 is void, they are entitled to a refund of impact fees paid to West Jordan. On July 19, 1988, R & D Engineers, Inc., filed a similar complaint. The trial court consolidated the cases.

West Jordan moved for summary judgment, claiming that the subdividers' complaints are barred by various statutes of limitation and "similar procedural defects." The subdividers filed a cross-motion for summary judgment on the statute of limi-

---

1. Where this opinion refers to "fees," "assessments," or "levies" paid under ordinance No. 33, those generic terms are intended to include both dedications of property and payment of impact fees in lieu thereof.

tation issue. They also filed a separate motion for summary judgment on other issues, contending that West Jordan's affirmative defenses of mistake, estoppel, waiver, laches, and unjust enrichment are, as a matter of law, without merit. The trial court granted West Jordan's motion for summary judgment, concluding that the subdividers (1) failed to file a notice of claim pursuant to the Utah Governmental Immunity Act within ninety days after their causes of action arose, and (2) failed to file their litigation within a one-year statute of limitation period after their cause of action arose. The trial judge also denied the subdividers' cross-motion for summary judgment and their motion for summary judgment on the affirmative defenses. The subdividers have now appealed.

In this appeal, we address two questions of law: (1) whether the Utah Governmental Immunity Act applies to the facts of this case, and (2) what statute of limitation applies and whether it expired before the subdividers filed their complaints. We accord no deference to the legal conclusions the trial court gave to support its grant of summary judgment. *City of Monticello v. Christensen*, 788 P.2d 513, 516 (Utah), *cert. denied*, ── U.S. ──, 111 S.Ct. 120, 112 L.Ed.2d 89 (1990).

## APPLICABILITY OF THE UTAH GOVERNMENTAL IMMUNITY ACT

■ Initially, West Jordan argues that the subdividers' action is barred by their failure to comply with the provisions of the Utah Governmental Immunity Act.[2] The

Act sets time limits within which a notice of claim and an action itself may be filed against a governmental entity. Utah Code Ann. §§ 63–30–13 to –15 (1989).[3] West Jordan asserts that the subdividers never filed their own notice of claim with the city. In response, the subdividers assert that they did not need to file such a notice because their claim for a refund of fees paid to West Jordan is equitable and therefore exempt from the notice requirements of the Utah Governmental Immunity Act.

■ This court long has recognized a common law exception to governmental immunity for equitable claims. *El Rancho Enterprises, Inc. v. Murray City Corp.*, 565 P.2d 778, 779 (Utah 1977) (citing *Auerbach v. Salt Lake County*, 23 Utah 103, 63 P. 907 (1901)). Neither the passage of time nor the enactment of the Utah Governmental Immunity Act has eroded this exception. *El Rancho*, 565 P.2d at 780; *Jenkins v. Swan*, 675 P.2d 1145, 1154 (Utah 1983). Therefore, in this case we face the question whether the claim sounds in law or equity.

■ If the fee imposed under ordinance No. 33 were a tax, the equitable nature of this claim would be clear. Taxpayers' actions generally are governed by equitable principles. 74 Am.Jur.2d *Taxpayers Actions* § 2, at 185 (1974). Taxpayers who are compelled to pay an illegal levy are specially damaged by the increase of the burden they are forced to bear, giving them an interest distinct from that of the general public. That interest entitles them to equitable relief. *Id.* § 14, at 205–06.

This court has previously held that for the purpose of determining the validity of

---

**2.** West Jordan also alleges that the action is barred by former Utah Code Ann. §§ 10–7–77 to –78. Those sections were repealed in 1978, 1978 Utah Laws ch. 27, § 12, and such claims are now covered exclusively by the Utah Governmental Immunity Act. *Jenkins v. Swan*, 675 P.2d 1145, 1154 (Utah 1983). For that reason, we do not consider the provisions of former sections 10–7–77 to –78 separately.

**3.** Section 63–30–13 of the Utah Governmental Immunity Act provides that a claim against a governmental entity is barred unless notice thereof is filed within a certain period of time after the cause of action arises. Until March 30,

1978, the period provided for the filing of such a notice of claim was ninety days. Utah Code Ann. § 63–30–13· (1965). In 1978, the Utah legislature changed the length of the period to one year. 1978 Utah Laws ch. 27, § 7. Section 63–30–14 provides that within ninety days of the filing of such a notice of claim, the government shall approve or deny it and, in the absence of such action before the end of the ninety-day period, the claim shall be deemed to have been denied. After effective or actual denial of a claim, the claimant has one year to institute an action in district court against the governmental entity. Utah Code Ann. § 63–30–15(2) (1989).

ordinance No. 33, the fee imposed under the ordinance is not strictly speaking a "tax." *See Call I*, 606 P.2d at 220–21. Nevertheless, for the purpose of determining whether the remedy sought is equitable in nature and whether the Utah Governmental Immunity Act applies, we conclude that the fee is analogous to a tax. Special assessments are very like taxes in terms of the burdens imposed on those assessed, and it makes sense to treat actions for their recovery as we would treat a taxpayer action.

Furthermore, this court already has recognized that an action to recover unlawful charges for city services is equitable in nature. *See El Rancho*, 565 P.2d at 779–80. The instant case similarly involves an action by private parties against a governmental entity to recover public revenues involuntarily paid and unlawfully collected. Accordingly, we hold that the subdividers' claims for fees paid under ordinance No. 33 are equitable and therefore exempt from the filing requirements and time limits imposed by the Utah Governmental Immunity Act. As a matter of law, the trial court incorrectly concluded that West Jordan was entitled to summary judgment because the subdividers did not comply with the time limits prescribed in Utah Code Ann. §§ 63–30–13 to –15 (1989).

## STATUTES OF LIMITATION

■ Having concluded that the subdividers' claims are equitable and not barred for failure to comply with the Utah Governmental Immunity Act, we must determine whether they are nonetheless barred by a statute of limitation. Historically, courts of equity were not bound by statutes of limitation. *See, e.g., Patterson v. Hewitt*, 195 U.S. 309, 317, 25 S.Ct. 35, 36, 49 L.Ed. 214 (1904). Today, however, many jurisdictions have commingled legal and equitable remedies in one form of action. In these jurisdictions, "the applicability of statutes of limitation to equitable proceedings appears to be unquestioned." 27 Am.Jur.2d *Equity* § 157, at 693 (1966). Utah is one of those jurisdictions that long ago commingled legal and equitable actions. *See Bor-*

*land v. Chandler*, 733 P.2d 144, 146 (Utah 1987) (citing Utah R.Civ.P. 2). Moreover, years before Utah merged its legal and equitable systems, Utah applied statutes of limitation to equitable actions. *See, e.g., Fullerton v. Bailey*, 17 Utah 85, 53 P. 1020 (1898). We therefore must determine which statute of limitation applies to this action.

Frequently, actions in equity are held to come within the scope of the statutory provision that establishes a time limit applicable to all causes of action for which a specific limit is not otherwise provided. 27 Am.Jur.2d *Equity* § 157, at 693 (1966). Utah's catch-all provision places a four-year limitation period on actions "not otherwise provided for by law." Utah Code Ann. § 78–12–25(3).

This court previously has applied the predecessor of section 78–12–25(3) to equitable actions. For instance, in *Branting v. Salt Lake City*, 47 Utah 296, 153 P. 995 (Utah 1915), the plaintiff brought an equitable action seeking nullification of a municipal ordinance that ordered the construction of a sewer and the assessment of a special tax on abutting property. 153 P. at 996. As a defense, the city interposed section 2833 of the Compiled Laws of 1907, which required, "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." 153 P. at 1000. We concluded that section 2833 applied to all actions, both legal and equitable, in which affirmative relief is sought. Because more than four years had elapsed since the claim accrued, the catch-all provision barred the claim. *See* 153 P. at 1001; *accord Fullerton v. Bailey*, 17 Utah at 93, 53 P. 1020. Again, in *Brown v. Cleverly*, 93 Utah 54, 70 P.2d 881 (1937), we applied Utah's four-year catch-all statute of limitation to preclude a claim for an equitable lien. 70 P.2d at 885. Before applying the catch-all statute to this case, however, we must satisfy ourselves that Utah's current statutes of limitation do not contain a more specific provision that should cover the instant case.

Defendants urge us to apply the six-month limitation period found in Utah Code

Ann. § 78–12–31. But this statute applies by its terms only to an action for a refund of monies paid to an officer acting as a tax collector. We concluded in *Ponderosa One Ltd. Partnership v. Salt Lake City Suburban Sanitary District*, 738 P.2d 635, 637 (Utah 1987), that section 78–12–31 did not apply to a claim for a refund of fees when those fees were not, strictly speaking, a tax. Although for equitable purposes the fee at issue in this case may resemble a tax, we have already held that it is not technically a tax. *See Call I*, 606 P.2d at 220–21. Thus the six-month period does not apply.

Defendants next urge us to apply the one-year limitation period found in Utah Code Ann. § 78–12–30. By its terms, this period begins to run only after a claim against a municipality has been "rejected by the board of county commissioners, city commissioners, city council or board of trustees, as the case may be." West Jordan admits that the subdividers never presented their claims to the West Jordan city council. Indeed, we have held earlier in this opinion that the subdividers were under no obligation to file any notice of claim with West Jordan before commencing this equitable action in district court. Thus, the one-year period of section 78–12–30 cannot apply.

Defendants then urge us to apply the three-year limitation period found in Utah Code Ann. § 78–12–26. We hesitate, however, to view this action as "an action for taking, detaining, or injuring personal property," Utah Code Ann. § 78–12–26(2), and we fail to see how any of the other provisions in section 78–12–26 apply to this case. We also note that precedent and sound policy suggest that we adopt the lengthier period when choosing between several possibly ambiguous statutes. *See Juab County Dep't of Public Welfare v. Summers*, 19 Utah 2d 49, 426 P.2d 1, 3 (1967). Thus we are not persuaded that this action can properly be construed to be within the terms of the three-year statute of limitation.

We can find no sound basis for adopting any of the above statutes of limitation other than the four-year statute. Therefore, in light of the above-referenced principle that actions in equity frequently are governed by a state's catch-all limitation statute, and in light of the Utah precedents that have applied our four-year catch-all statute to equitable actions, we are persuaded that the four-year limitation currently prescribed by Utah Code Ann. § 78–12–25(3) is the proper limitation period in this action.

■■■ We must next determine whether the four-year period had expired prior to commencement of this action. This first requires a determination of when the period began to run. Plaintiffs argue that the limitation period commenced as of July 23, 1986, the date this court, in *Call III*, held ordinance No. 33 void *ab initio*. The correct view, however, is that the limitation period begins to run as of the date on which the action could have been maintained to a successful conclusion. 51 Am. Jur.2d *Limitation of Actions* § 107, at 679 (1970). A right of action accrues when a wrong has been incurred that gives a right to bring and sustain a suit. *Id.* at 680. In this case, there is no dispute that such a right arose when the subdividers paid their impact fees between 1975 and 1978. Since this action was not commenced until 1988, it appears that the four-year period would have expired for any claims arising between 1975 and 1978.

■■■ The subdividers argue, however, that any statute of limitation was tolled until this court ruled in *Call III* on the question of class certification. We agree.[4]

---

**4.** In dissent, Justice Howe argues that tolling lasted only until 1979, claiming that this court upheld the trial court's denial of class action status, not in *Call III*, but in *Call I*. Justice Howe thereby creates an argument never raised or briefed by West Jordan; indeed, in the history of this case no one has previously suggested that this court's decision in *Call I* resolved the appeal of the class issue. Justice Howe admits that *Call I* contains no discussion of the class issue, but he infers that because plaintiffs' *Call I* briefs asked this court to review the class issue as well as the merits of the claim against West Jordan, *Call I*'s affirmance of the merits included a de facto affirmance of the trial court's denial of class status. There is no basis for

"The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 54 C.J.S. *Limitations of Actions* § 234, at 311 (1987). This principle is firmly established in federal law. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). As *American Pipe* and *Crown, Cork & Seal* explain, as long as the purported class is representative of all claims such that the defendant has adequate notice, then tolling serves to avoid duplication of litigation, promote justice, do equity, and generally further the judicial efficiency and economy that class actions are designed to promote. *See* 462 U.S. at 350–51, 103 S.Ct. at 2395–96; 414 U.S. at 553–55, 94 S.Ct. at 766–67. We now adopt the same rule as a matter of Utah law and hold that the commencement of a class action tolls the statute of limitation as to all putative class members who would have been parties had class certification been approved.

A further question, however, is how long this tolling effect continues. West Jordan argues that any tolling effect lasts only until the trial court resolves the class certification issue. The subdividers argue that the tolling effect continues during the appeal of the class certification question. *American Pipe* and *Crown, Cork & Seal* left this issue unclear as a matter of federal law. *See Byrd v. Travenol Laboratories, Inc.,* 675 F.Supp. 342, 347 (N.D.Miss. 1987). Several lower federal courts have since addressed this issue, uniformly concluding that the rationale for tolling continues throughout the pendency of the appeal. *See, e.g., Jimenez v. Weinberger,* 523 F.2d 689, 696 (7th Cir.1975); *West Haven School Dist. v. Owens–Corning Fiberglas Corp.,* 721 F.Supp. 1547, 1555 (D.Conn.1988); *Byrd,* 675 F.Supp. at 347; *Davis v. Bethlehem Steel Corp.,* 600 F.Supp. 1312, 1316 (D.Md.1985). *See generally* 54 C.J.S. *Limitations of Actions* § 122, at 165 (1987) ("[L]imitations will not run until the final disposition of the appeal."). We agree with the federal interpretations and conclude as a matter of Utah law that when a proper appeal of a class certification decision is taken, the tolling benefit continues on behalf of all members of the class until the class issue is finally determined by the decision on appeal.

There is no dispute in this case that the subdividers were members of the putative class in *Call.* The filing of the class action on February 7, 1978, therefore tolled the four-year statute of limitation with respect to the subdividers. The tolling effect continued until July 23, 1986, the date on which this court in *Call III* made final the denial of class certification.

Having determined that the four-year limitation period of Utah Code Ann. § 78–12–25(3) was tolled from February 7, 1978, to July 23, 1986, we must next determine whether any of the claims before us in this consolidated action were timely. Although the record before us does not contain the exact dates on which each of the subdivid-

---

determining without benefit of briefing or argument what this court may or may not have intended to do thirteen years ago. We point out, however, that it is equally possible that this court intentionally did not address the class issue in *Call I,* precisely because the *Call I* decision denied plaintiffs' requested relief on the merits; *Call I* thereby rendered the class status issue moot. Only after our rehearing in *Call II* did we agree to remand the case for additional argument on the merits, but there is no evidence that in *Call II* we then reached any conclusion about the putative class.

We have no way of knowing today whether our *Call I* affirmance should have been treated as the final resolution of the class question. We

do know that we certainly did not so treat it in *Call III,* when we fully addressed the class issue as though it were properly before us for the first time. Similarly, subsequent to *Call I,* the trial courts twice addressed plaintiffs' class certification requests with no reference to the doctrines of res judicata, stare decisis, or law of the case. Despite Justice Howe's assertion to the contrary, these circumstances raise the possibility that after *Call I* the class issue was still live or that plaintiffs were raising new claims vis-a-vis class certification, thus causing tolling to occur on successive occasions. The dissent's conclusion that *Call I* resolved the class certification appeal *sub silentio* is unwarranted.

ers paid the contested fees and thereby created each cause of action, nonetheless, the record is adequate for us to conclude that all claims except that of subdivider R & D Engineers, Inc., were timely.[5]

R & D Engineers' claim arose from fees paid sometime in June of 1975. Assuming the fees were paid on the last day of June (the most advantageous assumption for R & D), then as of February 7, 1978, when the class action tolled the four-year limitation period, two years, seven months, and seven days would have run against R & D's claim. The clock recommenced running on July 23, 1986, and ran until R & D filed its claim in the instant case on July 19, 1988, a period three days shy of two years. Added together, the time before the tolling started and the time after the tolling ceased is more than seven months over the four-year limit. The claim of R & D Engineers is thus barred, and we affirm the summary judgment against this claim.

Of the remaining claims, the earliest cause of action arose from fees paid by Arnold Development in November of 1976. Even assuming these fees were paid on the first day of November (the least advantageous assumption for Arnold Development), only one year, three months, and seven days had run against the claim as of the time the statute was tolled on February 7, 1978. As of that date, all other remaining claims had consumed even less of the four-year period. The four-year period then remained tolled until July 23, 1986. One year, four months, and one day later, on November 24, 1987, all the subdividers in this case other than R & D Engineers filed their claims in district court. Added together, for all claims other than R & D's, the time before tolling began and the time after tolling ceased is at most two years, seven months, and eight days, well within the four-year limit. These claims, therefore, were not barred. We reverse the district court's grant of summary judgment against Arnold Development Co., American Tierra Corp., Brighton Builders, Inc., and Covecrest Properties, and we remand these claims to the district court for further proceedings.

■ For purposes of the remand, however, we note that relief in equity may yet be denied on the ground of a plaintiff's laches even when a statute of limitation is not a bar. The doctrine of laches may apply in equity, whether or not a statute of limitation also applies and whether or not an applicable statute of limitation has been satisfied. See 27 Am.Jur.2d *Equity* § 157, at 693 (1966). That question will require resolution by the trial court.

The subdividers also have asked us to review the district court's denial of their motion for summary judgment regarding West Jordan's affirmative defenses. This we decline to do. The district court's denial of the subdividers' motion for summary judgment was part of its grant of West Jordan's summary judgment motion. In the context of determining to grant West Jordan's motion, the district court was under no obligation to consider the merits of the subdividers' motion, and it made no findings regarding their motion. It is therefore inappropriate for us to consider the merits of this motion. On remand, the subdividers, of course, may renew these arguments before the district court.

---

5. The subdividers paid impact fees to West Jordan on the following approximate dates for the following subdivisions:

| Date | Subdivision | Named Plaintiff |
|---|---|---|
| June 1975 | Magic Valley #2 | R & D Engineers |
| November 1976 | Nottingham Moor | Arnold Development |
| February 1977 | McHeather | American Tierra |
| May 1977 | Cathleen | American Tierra |
| June 1977 | Jordan Grove #5 | American Tierra |
| September 1977 | Diamondville | Arnold Development |
| August 1978 | Lessley Estates | Brighton Builders |
| August 1978 | Linsey Estates | Arnold Development |
| August 1978 | Vista Via | Covecrest Properties |

Affirmed as to the claim of plaintiff R & D Engineers, Inc.; reversed and remanded as to the claims of all other plaintiffs.

STEWART and ZIMMERMAN, JJ., concur.

HOWE, Associate Chief Justice (dissenting):

I dissent. I do not agree that the statute of limitations was tolled for plaintiffs until *Call III* was decided by this court on July 23, 1986. In my opinion, the statute was tolled only until *Call I* was decided on December 26, 1979.

When Call and Jenkins filed their complaint against West Jordan on February 7, 1978, their attorney sought class action certification. Judge Winder, the trial judge, denied certification and upheld the validity of the ordinance. Call and Jenkins appealed to this court, attacking the trial court's ruling in both respects. In their brief, under points IV and V, spread over five pages, they assailed the denial of class certification. On December 26, 1979, this court affirmed the trial court's rulings but discussed in the opinion only the validity of the ordinance. Plaintiffs petitioned for rehearing on our ruling upholding the ordinance but raised no objection to the affirmance of the denial of class certification.

Following remand of the case to the trial court to give plaintiffs an opportunity to present evidence that the dedication required of them bore no reasonable relationship to the need for flood control or parks and recreation facilities created by their subdivision, plaintiffs' counsel renewed his request for class certification before Judge Banks. Again, it was denied. Trying for a third time, counsel made a subsequent request before Judge Dee, which again was denied. This third denial was assailed in this court in *Call III*, where we upheld the denial.

It thus appears to me that when this court (Judges Crockett, Hall, and Stewart) affirmed the trial court in *Call I,* that affirmance included the denial of class certification even though that point was not expressly discussed in the opinion. It is a familiar rule of appellate practice that a court may affirm a judgment without discussing in its opinion each and every point raised by the appellant. *State v. Carter,* 776 P.2d 886, 888 (Utah 1989). That is what happened here. Call and Jenkins raised Judge Winder's denial as their points IV and V on appeal, and our affirmance of the trial court effectively ended the matter. The statute of limitations could not be tolled beyond the date of *Call I,* December 26, 1979.

Since class certification had been denied and that denial affirmed on appeal, no tolling resulted when counsel for Call and Jenkins *renewed* the request for certification. The second request, made to and denied by Judge Banks, was not appealed. The third request, made to and denied by Judge Dee, was affirmed by this court in *Call III.* But the subsequent renewals of the request did not start new tolling periods to run. I therefore cannot join the majority in holding that the statute of limitations was tolled until this court rendered its opinion in *Call III,* which was the second affirmance of the denial of certification.

In the majority opinion, it is asserted that this dissent creates an argument "never raised or briefed by West Jordan." That assertion is too broad. West Jordan clearly states in its brief that Judge Winder in *Call I* denied class action certification in April 1978 and argues that tolling, as a matter of law, does not extend into any appellate period. Since we decide that the law does allow tolling through the appellate period, the next logical step is to look to the appellate period following Judge Winder's denial. The appellate briefs of *Call I* are lodged in this court, and there is no reason for us to refuse to look at them.

The majority theorizes that in *Call I* we may have intentionally not addressed the class issue. That cannot be so, because on rehearing we reversed the trial court and

remanded the case to the trial court for further proceedings. Of necessity, we had to determine who should be entitled to participate in the proceedings following remand. There apparently was no doubt in the minds of the trial court judges about that fact since the class members did not participate in those subsequent proceedings. When the motion for class certification was renewed before Judges Banks and Dee, the motion was summarily denied. Those judges seemed to have no doubt about our ruling in *Call I.*

The majority does not explain why, if we did not decide the class issue in *Call I*, the present plaintiffs were not under any obligation to appeal Judge Banks' later denial of class certification if they wanted tolling to extend into the appellate period. The majority focuses only on the appellate period following Judge Dee's denial in *Call III.* But by the time Judge Dee denied the motion for class certification, the statute of limitations had long since run. It was not tolled following Judge Banks' denial because that denial was not appealed. The majority, without adequate explanation, allows the class issue to remain in limbo during the eight-year period from Judge Winder's denial in 1978 to our decision in *Call III* in 1986 and grants tolling all during that period. This does violence to the principle of tolling, which is designed to preserve a plaintiff's rights while a *timely* appeal is taken and decided.

HALL, C.J., concurs in the dissenting opinion of HOWE, Associate C.J.