Thomas Lee BYRD, Freddie Funchess, Arthur Mae Hampton, Walter Bernell Scott, Printress Earl Smith, Plaintiffs,

v.

TRAVENOL LABORATORIES, INC., Baxter Laboratories, Inc., Baxter Travenol Laboratories, Inc., Defendants.

Civ. A. No. DC 83–228–D–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Oct. 8, 1987.
On Motion For Reconsideration
Dec. 15, 1987.

---

action, plaintiffs allege that they were discriminated against during the years 1967 through 1976. Plaintiffs seek relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and pursuant to 42 U.S.C. § 1981. The plaintiffs are applicants for intervention in another employment discrimination action pending before this court, *Payne v. Travenol Laboratories, Inc.*, Civ. Act. No. 72–13–D–D. The *Payne* action has been underway before this court since 1972. The present action was filed allegedly to preserve plaintiffs' rights under the Notices of Right to Sue issued by the Equal Employment Opportunity Commission on June 30, 1983. If plaintiffs had not filed their own suit within the 90–day period prescribed by 42 U.S. C. § 2000e–5(f), and if intervention in the *Payne* action is not permitted, plaintiffs might be barred from filing a new suit. In order to rule on the present motion to dismiss, the court is of the opinion that an abbreviated review of the history of the *Payne* case would be helpful at this juncture.

Richard T. Seymour, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., Nausead Stewart, Jackson, Miss., for plaintiffs.

Stephen N. Shulman, Cadwalader, Wickersham & Taft, Washington, D.C., T.H. Freeland, III, Oxford, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on the defendants' motion to dismiss for failure to state a claim. Having reviewed the parties' briefs and being otherwise fully advised in this matter, the court is of the opinion that the defendants' motion should be sustained in part and denied in part.

## I

### FACTUAL BACKGROUND

The history of this action dates back to 1967. In this employment discrimination

### A. Brief History of *Payne v. Travenol*

The *Payne* litigation in which plaintiffs seek to intervene was commenced on March 2, 1972, when Payne and two other individuals filed a class action complaint alleging race discrimination in certain of Travenol's employment practices. On November 16, 1972, this court defined a class for that action consisting of all black employees and applicants for employment at Travenol since March 3, 1970. This class certification became obsolete or meaningless on December 1, 1972 when the *Payne* plaintiffs sought and were granted leave (on May 1, 1973) to amend their complaint to allege sex discrimination. Thereafter, on May 8, 1973 the sole male plaintiff in *Payne*, Mr. James Williams, voluntarily withdrew from the case. On July 31, 1973, the court permitted an additional complaint in intervention by Delilah Cherry and Birdie Lee Griffin, alleging discrimination on the basis of both race and sex.

On December 20, 1974, this court in *Payne* determined that a conflict between the original sex discrimination claims and the interests of black males prevented the *Payne* plaintiffs from adequately representing the interests of the males. The court, therefore, redefined the class so that it did not include males. A two-week trial was held in March 1975 and Judge Orma Smith handed down his decision on liability in the case on February 19, 1976. In that decision Judge Smith found that the defendants had discriminated against blacks and women in various respects, including discrimination in the imposition of a 10th-grade education rerequirement. *See Payne v. Travenol Laboratories, Inc.*, 416 F.Supp. 248 (N.D.Miss.1976). Limited injunctive relief was granted at that time as to this educational requirement and the parties' proposals for a final decree were sought. *Id.* at 265–266.

On March 19, 1976, the defendants took an appeal to the Fifth Circuit. The scope of the appeal was limited to the partial injunction entered on February 19, 1976. The Fifth Circuit deferred ruling on the appeal until entry of a final order, so that an appeal from the final order could be consolidated with the limited appeal before the Court of Appeals.

On December 8, 1976, the district court made final the definition of the class which had been conditionally entered on December 20, 1974. *See Payne v. Travenol Laboratories, Inc.*, 74 F.R.D. 14 (N.D.Miss. 1976). In 1978, the Court of Appeals handed down its first decision on appeal of this case. The Fifth Circuit affirmed in part and reversed in part the limited injunction entered below. *See Payne v. Travenol Laboratories*, 565 F.2d 895 (5th Cir.1978) (*Payne I*), *cert. denied*, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). The court's reversal of the injunction against the 10th-grade education requirement was made on the grounds that: (1) the named plaintiffs had all finally satisfied the requirement by the date that suit was filed; (2) any inability of plaintiff Payne to satisfy the 10th-grade education requirement before March 3, 1970 was irrelevant because the trial court's class definition had removed from consideration all applications for employment submitted prior to March 3, 1970; and (3) the class, by definition, excluded persons who had been harmed by the requirement.

On August 20, 1980, the court adopted the United States Magistrate's recommendation for entry of a final decree. Both parties appealed. On April 22, 1982, the Fifth Circuit handed down its second decision on appeal. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798 (5th Cir. 1982) (*Payne II*), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982). The Court of Appeals upheld the exclusion of black males from the class on the ground that black females alleging claims of both race and sex discrimination had a conflict of interest with black males whose interests lay only in the claims of race discrimination. *Id.* at 810–811. The Court of Appeals noted that there was no black male plaintiff and thus a separate subclass of black males could not be created; the Fifth Circuit also held that the district court's decision not to give black males notice of their impending exclusion from the class was not reversible error. *Id.* at 811–813. The Court of Appeals also reversed the opening date restriction on class membership. The Court of Appeals held that the class on the Title VII count should extend back to October 31, 1969, and that the class on the Section 1981 count for claims of racial discrimination should extend back to March 2, 1966 if the district court found that there was racial discrimination going back to that date. *Id.* at 813–815. The Fifth Circuit then remanded *Payne* for additional proceedings before this court.

### B. The *Byrd* Plaintiffs

On February 17, 1983, six black applicants, each one a plaintiff in this cause, moved for leave to intervene as additional plaintiffs in *Payne*. These plaintiffs sought to intervene to resolve the conflict of interest cited by the Fifth Circuit and to expand the class definition to include black males harmed by the same types of racial discrimination which had already been

found as to black females. The present plaintiffs were never included as plaintiffs in *Payne;* however, they now allege race discrimination against black males in Travenol's hiring and promotion practices and race discrimination against blacks allegedly harmed by the prior 10th-grade education requirement. The alleged discrimination reportedly occurred between 1967 and 1976. The motion to intervene is presently pending before this court and will be addressed in a separate manner at a later date.

The EEOC issued Notices of Right to Sue dated June 30, 1983 to each of the applicants for intervention in *Payne.* To avoid the possibility of losing their right to bring suit during the pendency of their application for leave to intervene, these plaintiffs filed this action on September 29, 1983. With their complaint plaintiffs filed a Related Case Statement and a Motion to Consolidate this action with *Payne.*

On October 21, 1983, the defendants filed the present motion to dismiss this action for failure to state a claim. By its order of October 26, 1983, the court permitted the defendants until 10 days after the court has ruled on the motion to dismiss to respond to the plaintiffs' motion to consolidate. A status conference in this cause was held in December 1986.

## II

## CONCLUSIONS OF LAW

### A. Plaintiffs' Title VII Claims

Defendants argue that the plaintiffs have done nothing to pursue their claims for alleged discrimination since black males were excluded from the *Payne* litigation in 1974.[1] Accordingly, defendants contend the present action is untimely and cannot be maintained by the plaintiffs because it is barred by the applicable statutes of limita-

tions. Plaintiffs understandably contend that this action is not time-barred.

In reviewing a matter on a motion to dismiss for failure to state a claim, Fed.R. Civ.P. 12(b)(6), the court must permit the complaint to stand "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This restriction is generally applicable as to the factual allegations and the substantive aspects of the plaintiffs' claim. In this cause, however, defendants argue a jurisdictional type question in alleging that the plaintiffs' action is time-barred. Defendants would have the court dismiss this action without looking closely at the merits.

The court notes initially that since there was no notice given to absent class members when black males were excluded from the court's redefined class,[2] these black males were not given an opportunity to decide whether to "opt out" or to pursue their own lawsuits. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176, 94 S.Ct. 2140, 2151, 40 L.Ed.2d 732 (1974). The present plaintiffs were arguably included in the class of black males and females before the class was redefined by the court in December 1974. Since they were given no notice to pursue their own actions, these plaintiffs did nothing to pursue their own claims from 1974 until 1983. The court must decide whether the statute of limitations on their claims ran during that time period.

In the case of *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court ruled that: "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Id.* at 354, 103 S.Ct. at 2397–98. Similarly, the Supreme Court held in *American Pipe & Construc-*

---

**1.** Aside from their alleged reliance on the *Payne* plaintiffs to represent their interests, the present plaintiffs apparently took no affirmative action to protect their rights prior to 1983.

**2.** In its 1982 decision, the Fifth Circuit ruled that this failure to notify black males of their exclusion from the class was not reversible error. *Payne II* at 811–813. The Court of Appeals did not address the statute of limitations issue in its decision.

*tion Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) that "the commencement of a class action suspends the applicable statute of limitations as to all asserted class members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. at 766. The intent of the *American Pipe* suspension rule is to preserve the individual right to sue of members of a proposed class until the issue of class certification has been decided. *Crown, Cork & Seal, supra,* at 354, 103 S.Ct. at 2398. (Powell, Jr., concurring).

Defendants argue that the issue of class certification was decided when this court finally redefined the class in *Payne* by its order of December 8, 1976. Defendants would, therefore, have the statute of limitations begin running on plaintiffs' claims as early as December 8, 1976 or December 20, 1974, when the court initially redefined the class in *Payne* to exclude black males.

Plaintiffs point to the proposed need for a rule that would not result in a multitude of duplicative filings. They suggest that the putative subclass representatives should not be required to file individual EEOC charges and a new lawsuit while the original plaintiffs in the class action case are still seeking the district court's reconsideration of the limitations on the class and are challenging those limitations on appeal. The *American Pipe* decision supports the plaintiffs' contention and indicates that the functional purpose of a statute of limitations is to prevent stale lawsuits or suits brought after "evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* at 554, 94 S.Ct. at 766. Since the *Payne* action continued to be actively prosecuted, plaintiffs apparently argue that their claims alleged to arise from the same discriminatory actions by defendants could not have become stale.

Another purpose often cited for statutes of limitation is to provide the defendant with timely notice of potential claims. As the Supreme Court noted in *American Pipe,* the filing of a class action by one plaintiff who is found to be representative of a class provides sufficient notice to the defendant of potential additional plaintiffs who may participate in the judgment. *Id.* at 554–555, 94 S.Ct. at 767.

The Supreme Court explained in *Crown, Cork & Seal* that absent putative class members may remain passive during the early stages of the class action to "rely on the named plaintiffs to press their claims." *Id.* at 352–353, 103 S.Ct. at 2397. As the Court further explained: "Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353, 103 S.Ct. at 2397.

The obvious question which presents itself is whether a nine-year lapse of time can be characterized as the "early stages of the class action" and whether plaintiffs' action filed after that time represents unfair surprise to the defendants herein. Defendants say it does. Defendants also state that claimants excluded from a class must seek to intervene or file their own suits promptly after decertification. The defendants also suggest that under the rationale of *American Pipe* and *Crown, Cork & Seal,* the tolling of the statute of limitations ended either in 1974 or 1976 with respect to these plaintiffs and that their actions are now time-barred.

Plaintiffs suggest, alternatively, that until the possibility that the denial of class certification or the restrictions on class membership is "cleared up" on appeal, it is senseless to require unnamed class members to take action. To require putative, prospective class members to file separate lawsuits while issues in the original class action suit remain to be resolved on appeal, plaintiffs say, would constitute the sort of "needless multiplicity of actions" which the Supreme Court sought to prevent with the tolling rule of *American Pipe* and *Crown, Cork & Seal.*

The court takes due notice that nearly nine years passed from the time these plaintiffs were removed from the class in *Payne* until the time they filed this action. Black males and females without a 10th-grade education or equivalent were re-

moved from the *Payne* class on December 20, 1974. The class definition in *Payne* was made final on December 8, 1976 and was not disturbed by the Court of Appeals' first review of this case on appeal in 1978. In its subsequent review of the *Payne* matter in 1982, the Fifth Circuit again did not disturb the composition of the class as defined by this court, but merely reversed the opening date restriction. The Fifth Circuit's second decision on appeal was handed down on April 22, 1982. *See Payne II, supra.* The Supreme Court denied certiorari in *Payne II* on November 29, 1982. Plaintiffs did not file their motion for leave to intervene in *Payne* until February 17, 1983 and their complaint in this cause was not filed until September 29, 1983.

There are at least five separate dates from which to begin running the statute of limitations against the plaintiffs' claims: (1) December 8, 1976, when this court finalized its earlier redefinition of the class in *Payne* (thereby denying certification to the subclass plaintiffs represent in the case *sub judice*); (2) March 23, 1978, when the Fifth Circuit handed down its decision in *Payne I;* (3) October 2, 1978, when the Supreme Court denied certiorari on *Payne I;* (4) April 22, 1982, when the Fifth Circuit handed down its latest opinion on appeal in *Payne II;* or (5) November 29, 1982, when the Supreme Court denied certiorari on *Payne II.* To come within the required 180–day filing requirement of Title VII, 42 U.S.C. § 2000e–5(e), plaintiffs must rely on November 29, 1982 as the appropriate date for the tolling of the statute of limitations to have ended as to their claim. Any earlier date would render their motion to intervene in February 1983 and their September 1983 filing of this action untimely.[3]

■ The court now comes to the central issue in this case: ascertaining what the Supreme Court meant in *American Pipe* when it held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553, 94 S.Ct. at 766. The enigmatic language is the clause "after the court has found the suit inappropriate for class action status." The defendants argue that the statute of limitations begins to run against putative class members seeking to pursue their individual claims once the court enters *any* order with regard to the issue of class certification. Plaintiffs on the other hand would have the statute of limitations continue to be tolled until a "final" order is entered. More specifically, the plaintiffs strongly suggest that the statute of limitations did not begin to run on their Title VII claims until the Supreme Court denied certiorari on *Payne II* in December 1982. The court disagrees with plaintiffs' assessment of the proper "final" order to be considered for the purpose of the running of the statute of limitations.

Inasmuch as the Fifth Circuit did not disturb on appeal the district court's redefinition of the class to exclude black males, the court construes the appropriate final order to be the Supreme Court's denial of certiorari on *Payne I* in 1978. At that point in time, the plaintiffs in this action were put on notice that their rights were no longer being represented by the class action plaintiffs in *Payne.* If the plaintiffs wished to intervene in *Payne* or to file separate actions, the appropriate time for doing so was after *Payne I.*[4] Since the Fifth Circuit ruling did not reverse or otherwise disturb the district court's order of December 8, 1976 redefining the class in *Payne* to exclude black males, plaintiffs had no basis for delaying their intervention in *Payne* at that time to seek the certification of a subclass of black males. Nor were plaintiffs justified in assuming that the Fifth Circuit might later require certification of a subclass of black males when *Payne* went up on appeal once again. As

---

3. The court notes that even if the latest date is selected, this action appears untimely because the complaint was not filed until September 1983.

4. The court need not decide at this juncture that plaintiffs' motion to intervene was untimely. The only issue addressed here is whether plaintiffs' September 29, 1983 complaint was timely filed.

evidenced by the 1982 Fifth Circuit decision in *Payne II,* no further action whatsoever was taken on the issue of the composition of the class in *Payne* at that time. *See Payne II, supra.*

Plaintiffs did nothing, however, from 1978 until 1983. Plaintiffs did not file any EEOC charges until May and June of 1983. To paraphrase from the Supreme Court's holding in *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 394, 97 S.Ct. 2464, 2470, 53 L.Ed.2d 423: "In short, as soon as it became clear to the [plaintiffs] that the interests of the unnamed class members would no longer be protected by the named class representatives, [they should have] promptly moved to intervene to protect those interests." As to their Title VII claims, the court holds that plaintiffs did not move promptly to protect their interests and their claims under Title VII are now time-barred. Whatever date is applied between the time of the original filing of *Payne* in 1972 and the Supreme Court's denial of certiorari in 1982, it is clear that plaintiffs did not file a charge with the EEOC within 180 days "after the alleged unlawful practice occurred." 42 U.S.C. § 2000e–5(e). Their Title VII claims must be dismissed as untimely.[5]

### B. Plaintiffs' Section 1981 Claims

Defendants suggest that Section 1981 claims must be filed within six years of the alleged acts of discrimination. *Jordan v. Lewis Grocer Co.,* 467 F.Supp. 113, 116 (N.D.Miss.1979). This appears to be a proper statement of the law under the Supreme Court's mandate that federal courts are to select the "most appropriate" or "most analogous" state statute of limitations where the federal statute involved prescribes no limitation. *See Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *Board of Re-*

*gents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). The six-year statute of limitations in Mississippi applies to all actions for which no other limitation is prescribed. Miss.Code Ann. § 15–1–49 (1972). The court is directed to no other applicable statute of limitation.

Finding as the court has that the tolled statute of limitation began to run again with the Supreme Court's denial of certiorari in 1978, the court finds that the plaintiffs' Section 1981 claims filed in September 1983 were timely. The court therefore finds that defendants' motion to dismiss the plaintiffs' Section 1981 on statute of limitations grounds is not well taken and should be denied.

Accordingly, a separate order consistent with this opinion granting defendants' motion to dismiss as to plaintiffs' Title VII claims and denying defendants' motion to dismiss as to plaintiffs' Section 1981 claims will be issued.

## ON MOTION FOR RECONSIDERATION

This cause is presently before the court on the parties' cross-motions for reconsideration and plaintiffs' motion to consolidate. Having reviewed the parties' briefs and being otherwise fully advised in this matter, the court is of the opinion that the defendants'. motion and the plaintiffs' motion should be denied.

### I

### FACTUAL BACKGROUND[1]

The history of this action dates back to 1967. In this employment discrimination action, plaintiffs allege that they were discriminated against during the years 1967 through 1976. Plaintiffs seek relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and pursu-

---

5. The Fifth Circuit has held that putative class members may not piggyback one class action onto another and thereby toll the statute of limitations indefinitely. *Salazar-Calderon v. Presidio Valley Farmers Ass'n.,* 765 F.2d 1334 (5th Cir.1985) *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986). In addition to the reasons for denying plaintiffs' Title VII claim as untimely discussed above, *Salazar-Cal-*

*deron* appears to be dispositive on the issue as to the putative subclass attempting to piggyback this action onto *Payne.*

1. The factual findings set forth herein are essentially identical to those set forth in the court's October 8, 1987 memorandum opinion.

ant to 42 U.S.C. § 1981. The plaintiffs are applicants for intervention in another employment discrimination action pending before this court, *Payne v. Travenol Laboratories, Inc.*, Civ. Act. No. 72–13–D–O. The *Payne* action has been underway before this court since 1972. The present action was filed allegedly to preserve plaintiffs' rights under the Notices of Right to Sue issued by the Equal Employment Opportunity Commission on June 30, 1983. If plaintiffs had not filed their own suit within the 90–day period prescribed by 42 U.S.C. § 2000e–5(f), and if intervention in the *Payne* action is not permitted plaintiffs might be barred from filing a new suit. In order to rule on the present motions to reconsider addressed to this court's dismissal of plaintiffs' Title VII claims and denial of the defendants' motion to dismiss plaintiffs' 1981 claims, the court is of the opinion that an abbreviated review of the history of the *Payne* case would again be helpful at this juncture.

A. Brief History of *Payne v. Travenol*

The *Payne* litigation in which plaintiffs seek to intervene was commenced on March 2, 1972 when Payne and two other individuals filed a class action complaint alleging race discrimination in certain of Travenol's employment practices. On November 16, 1972, this court defined a class for that action consisting of all black employees and applicants for employment at Travenol since March 3, 1970. This class certification became obsolete or meaningless on December 1, 1972 when the *Payne* plaintiffs sought and were granted leave (on May 1, 1973) to amend their complaint to allege sex discrimination. Thereafter, on May 8, 1973, the sole male plaintiff in *Payne*, Mr. James Williams, voluntarily withdrew from the case. On July 31, 1972 the court permitted an additional complaint in intervention by Delilah Cherry and Birdie Lee Griffin, alleging discrimination on the basis of both race and sex.

On December 20, 1974, this court in *Payne* determined that a conflict between the original sex discrimination claims and the interests of black males prevented the plaintiffs from adequately representing the interests of the males. The court, therefore, redefined the class so that it did not include males. A two-week trial was held in March 1975 and Judge Orma Smith handed down his decision on liability in the case on February 19, 1976. That decision found that the defendants had discriminated against blacks and women in various respects, including discrimination in the imposition of a 10th-grade education requirement. *See Payne v. Travenol Laboratories, Inc.*, 416 F.Supp. 248 (N.D.Miss.1976). Limited injunctive relief was granted at that time as to this education requirement and the parties' proposals for a final decree were sought. *Id.* at 265–266.

On March 19, 1976, the defendants took an appeal to the Fifth Circuit. The scope of the appeal was limited to the partial injunction entered on February 19, 1976. The Fifth Circuit deferred ruling on the appeal until entry of a final order, so that an appeal from the final order could be consolidated with the limited appeal before the Court of Appeals.

On December 9, 1976, this district court made final the definition of the class which had been entered on December 20, 1974. *See Payne v. Travenol Laboratories, Inc.*, 74 F.R.D. 14 (N.D.Miss.1976). In 1978 the Court of Appeals handed down its first decision on appeal of this case. The Fifth Circuit affirmed in part and reversed in part the limited injunction entered below. *See Payne v. Travenol Laboratories*, 565 F.2d 895 (5th Cir.). *(Payne I), cert. denied*, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). The court's reversal of the injunction against the 10th-grade education requirement was made on the grounds that: (1) the named plaintiffs had all finally satisfied the requirement by the date that suit was filed; (2) any inability of plaintiff Payne to satisfy the 10th-grade education requirement before March 3, 1970 was irrelevant because the trial court's class definition had removed from consideration all applications for employment submitted prior to March 3, 1970; and (3) the class, by definition, excluded persons who had been harmed by the requirement.

On August 18, 1980, the court adopted the United States Magistrate's recommendation for entry of a final decree. Both parties appealed. On April 22, 1982, the Fifth Circuit handed down its second decision on appeal. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798 (5th Cir.) (*Payne II*), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982). The Court of Appeals upheld the exclusion of black males from the class on the ground that black females alleging claims of both race and sex discrimination had a conflict of interest with black males, whose interests lay only in their claims of race discrimination. *Id.* at 810–811. The Court of Appeals noted that there was no black male plaintiff to represent the interests of black males and thus a separate subclass of black males could not be created. *Id.* at 812–813. The Fifth Circuit also held that the district court's decision not to give black males notice of their impending exclusion from the class was not reversible error. *Id.* at 813. The Court of Appeals also reversed the opening date restriction on class membership. The Court of Appeals held that the class on the Title VII count should extend back to October 31, 1969, and that the class on the Section 1981 count for claims of racial discrimination should extend back to March 2, 1966 if the district court found that there was racial discrimination going back to that date. *Id.* at 813–815. The Fifth Circuit then remanded *Payne* for additional proceedings before this court.

## B. The *Byrd* Plaintiffs

On February 17, 1983 six black applicants, each one a plaintiff in this cause, moved for leave to intervene as additional plaintiffs in *Payne*. These plaintiffs sought to intervene to resolve the conflict of interest cited by the Fifth Circuit and to expand the class definition to include black males harmed by the same types of racial discrimination which had already been found as to black females. The present plaintiffs were never included as plaintiffs in *Payne;* however, they now allege race discrimination against black males in Travenol's hiring and promotion practices and race discrimination against blacks allegedly harmed by the prior 10th-grade education requirement. The alleged discrimination reportedly occurred between 1967 and 1976. The motion to intervene is presently pending before this court and will be addressed in a separate ruling in the *Payne* class at a later date.

The EEOC issued Notices of Right to Sue dated June 30, 1983 to each of the applicants for intervention in *Payne*. To avoid the possibility of losing their right to bring suit during the pendency of their application for leave to intervene, these plaintiffs filed this action on September 29, 1983. With their complaint plaintiffs filed a Related Case Statement and the pending Motion to Consolidate this action with *Payne*.

On October 8, 1987, this court entered a memorandum opinion and order dismissing plaintiffs' Title VII claims but denying defendants' motion to dismiss the plaintiffs' Section 1981 claims.

On October 23, 1987, the defendants filed the present motion to reconsider, asking the court to reconsider its denial of the defendants' motion to dismiss plaintiffs' Section 1981 claims on statute of limitations grounds. On November 5, 1987 plaintiffs filed their cross-motion for reconsideration urging the court to reconsider its dismissal of their Title VII claims. On November 12, 1987 defendants filed their answer and opposition to the plaintiffs' pending motion to consolidate.

## II

## CONCLUSIONS OF LAW

### A. Plaintiffs' Title VII Claims

In its decision of October 8, 1987, the court ruled that plaintiffs' Title VII claims were time-barred because they did not file their complaint in this action until September 29, 1983 following the Supreme Court's denial of certiorari in *Payne II* in November 1982. The September 1983 filing of the complaint in this action was found to be

beyond the 180–day period prescribed by 42 U.S.C. § 2000e–5(e) [2].

Plaintiffs argue in their motion to reconsider an issue which they assert the court did not reach in its earlier opinion, i.e., whether the filing of the plaintiffs' motion to intervene in *Payne* was a timely filing which preserved plaintiffs' Title VII claims. *See Byrd v. Travenol Laboratories*, No. 675 F.Supp. 342, 347 n. 4 (N.D.Miss.1987). The court concludes that this argument is without merit.

■ Even if the plaintiffs' motion to intervene in *Payne* preserved their claims under the applicable statute of limitations in *Payne*, the motion to intervene had no effect on the timeliness of this action which was not filed until September 29, 1983. Thus, while plaintiffs' decision to intervene in the *Payne* litigation may have represented a timely exercise of their rights, the filing of the complaint in this action after the appropriate 180–day period had lapsed rendered the plaintiffs' Title VII claims untimely as concerns the *Byrd* complaint. The court can discern no authority for the proposition that a motion to intervene in one action tolls the statute of limitations in a separate, independent action.

As the Supreme Court held in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983):

> Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits *or* to intervene as plaintiffs in the pending action. (emphasis added)

*Id.* at 354, 103 S.Ct. at 2397–98. Plaintiffs made the unusual decision in the case *sub judice* of pursuing both alternatives, seeking to intervene in *Payne* first and later filing their own suits. The decision to intervene in *Payne* may have been timely made,[3] however, the filing of the complaint in this action on September 29, 1983 was untimely for the reasons stated above. Plaintiffs have advanced no explanation for their failure to file EEOC charges simultaneously with their motion to intervene in *Payne*.

Accordingly, the court finds that the plaintiffs' motion to reconsider the court's dismissal of their Title VII claims should be denied.

### B. Plaintiffs' Section 1981 Claims

Defendants ask the court to reconsider its earlier denial of their motion to dismiss the plaintiffs' Section 1981 claims on statute of limitations grounds. In this motion to reconsider, defendants argue that the applicable statute of limitation is Mississippi's one-year statute for personal injury claims, Miss.Code Ann. § 15–1–35 (1972), for the plaintiffs' Section 1981 claims and not the previously argued six-year statute, Miss.Code Ann. § 15–1–49 (1972). The plaintiffs concede that the six-year statute may not be the appropriate one, but argue instead that the appropriate statute of limitation is Mississippi's three-year statute, applicable to actions on accounts and unwritten contracts. Miss.Code Ann. § 15–1–29 (1972).

The court must determine which statute of limitations applies to plaintiffs' Section 1981 claims because Section 1981 itself contains no limitation provision.[4] In making

---

**2.** Plaintiffs assert that their filing of charges with the EEOC on May 19, 1983, many years after the alleged unlawful discriminatory practices, was a timely filing after the Supreme Court's denial of certiorari on November 19, 1982. The court's calculations, however, reveal that the May 19, 1983 filing would have been 181 days after the Supreme Court's denial of certiorari. Thus, the filing of charges with the EEOC by plaintiffs was untimely. Consequently, the filing of this lawsuit within 90 days after the plaintiffs received their notices of right to sue must also be considered untimely.

**3.** Contrary to what plaintiffs may contend, this action and the *Payne* action are not one and the same. Therefore, the court is not required to permit this action to continue even if the court should ultimately rule that the plaintiffs are proper intervenors in *Payne*. Since the Title VII claims of the complaint in this action are time-barred, those claims must be dismissed.

**4.** In its decision of October 8, 1987, this court accepted without discussion the parties' argument that the six-year statute was the appropriate statute of limitations. The parties now ask the court to reconsider the decision in light of

this determination, the Supreme Court has advised that the "most appropriate" state statute of limitation or the state statute applying to the cause of action most analogous to the cause of action alleged under Section 1981 should be applied. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

Mississippi's six-year statute of limitation, Miss.Code Ann. § 15–1–49, had previously been held to apply to Section 1981 claims alleging discrimination in hiring because the terms of Section 15–1–49 provide that it is applicable to "all actions for which no other period of limitation is prescribed...." *Id.* Prior to 1985 the Fifth Circuit, in following the Supreme Court's direction to choose the "most analogous" or "most appropriate" state statute of limitation, *Burnett v. Grattan*, 468 U.S. 42, 49–50, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984), had chosen Mississippi's six-year statute for § 1981 discriminatory hiring claims. *Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982); *Truvillion v. King's Daughters Hospital*, 614 F.2d 520 (5th Cir.1980). For discriminatory terminations challenged under Section 1981, the Fifth Circuit had prior to 1985 applied Mississippi's one-year statute. *White v. United Parcel Service*, 692 F.2d 1 (5th Cir.1982).

■ In 1985 the Supreme Court decided in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that "federal interests in uniformity, certainty, and the minimization of unnecessary litigation" required the federal courts "to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 275, 105 S.Ct. at 1947. For Section 1983 claims in Mississippi, the Fifth Circuit selected the one-year statute (§ 15–1–35) as the most appropriate period of limitations under the *Wilson* analysis. *Gates v. Spinks*, 771 F.2d 916 (5th Cir.1985), *cert. denied*, 475 U.S. 1065, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986).

There is nothing in *Wilson* to suggest that its analysis should apply only to Section 1983 cases. In chief, this case presents the issue of whether the *Wilson* mandate of selecting the "one most appropriate statute of limitations" for Section 1983 claims should also be applied to Section 1981 claims brought in Mississippi.[5] The Supreme Court suggested in *Wilson* that "uniformity within each State is entirely consistent with the borrowing principle contained in § 1988." *Id.* at 275, 105 S.Ct. at 1947. Defendants seemingly argue that if the *Wilson* analysis is applied to plaintiffs' Section 1981 claims that those claims would be time-barred under Mississippi's one-year statute of limitations.

The Supreme Court's recent decisions in *Goodman v. Lukens Steel Co.*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) and *Saint Francis College v. Al–Khazraji*, —— U.S. ——, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), apparently support the defendants' argument that one statute should be applied to all Section 1981 claims.[6] In *Goodman*, the Supreme Court implicitly approved the Third Circuit's selection of one Pennsylvania statute as the most appropriate statute of limitation for all Section 1981 actions in that State. *Id.* —— U.S. at ——, 107 S.Ct. at 2620–22, 96 L.Ed.2d at

the possible affect of two recent Supreme Court decisions on their earlier argument.

5. Three other circuits have recently held that *Wilson* does apply to other federal claims in addition to Section 1983 claims. *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500 (11th Cir.1986) (*Wilson* applied to federal securities claims); *Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416 (D.C. Cir.1986) (*Wilson* applied to Section 1981 claims); *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3rd Cir.1985), *aff'd*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (*Wilson* applied to Section 1981 claims).

6. In *Goodman*, the Supreme Court ostensibly acknowledged that just as Section 1983 could result in a variety of different actions calling for the application of various different statutes of limitation, "Section 1981 has a much broader focus than contractual rights." *Id.* —— U.S. ——, 107 S.Ct. at 2621, 96 L.Ed.2d at 582. Accordingly, the court held that "*Wilson's* characterization of Section 1983 claims is thus equally appropriate [with Section 1981 claims], particularly since Section 1983 would reach state action that encroaches on the rights protected by Section 1981." *Id.*

581–583. As Justice O'Connor observed, the Supreme Court in *Goodman* evidenced its "decision to apply a uniform characterization for limitations purposes to actions arising under 42 U.S.C. Section 1981." *Id.* at ——, 107 S.Ct. at 2636, 96 L.Ed.2d at 600 (O'Connor, J., concurring in judgment and dissenting).

■ There remains the difficult question, however, of whether any single statute selected by this court should be applied retroactively to bar the plaintiffs' Section 1981 actions in the case *sub judice.* The Supreme Court in *Saint Francis College, supra,* agreed with the Third Circuit decision not to apply retroactively a newly-selected statute of limitations for Section 1981 claims. *Id.* —— U.S. ——, 107 S.Ct. at 2025, 95 L.Ed.2d at 588–589. The Supreme Court counseled that the analysis set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) should be used to determine whether a change from past precedent should be applied retroactively to bar a complaining party's action. *Saint Francis College, supra,* —— U.S. at ——, 107 S.Ct. at 2025, 95 L.Ed.2d at 589.

In *Chevron Oil Co.,* the Supreme Court set forth three principles to be applied in determining whether a decision should be given retroactive applicability: 1) whether the decision to be applied non-retroactively established a new principle of law or overruled a clear past precedent on which the litigants may have relied; 2) whether the retroactive application of the new rule would be inconsistent with the purpose of the underlying substantive law; and, (3) whether the retroactive application would produce inequitable results. *See Chevron Oil Co.* at 106–107, 92 S.Ct. at 355. The court addressed each of these factors separately below.

1. Whether the Decision Establishes a New Principle of Law or Overrules a Clear Past Precedent on Which the Litigants May Have Relied

The decision in question here is the court's determination of whether to apply

Mississippi's one-year statute of limitations to plaintiffs' Section 1981 claims under *Gates* and *Wilson.* If this statute is applied, plaintiffs' claims will clearly be time-barred because their complaint was not filed until September 29, 1983. As the court has previously ruled, the statute of limitations began to run on plaintiffs' Section 1981 claims with the Supreme Court's denial of certiorari in 1978. *Byrd v. Travenol Laboratories, Inc.,* 675 F.Supp. 342, 348 (N.D.Miss.1987).

Plaintiffs argue that it was obvious, prior to *Wilson v. Garcia,* that their Section 1981 claims would be governed either by the three-year statute of limitations for breach-of-contract cases [7] Miss.Code Ann. § 15–1–29 (1972), or the residual six-year statute of limitations, Miss.Code Ann. § 15–1–49 (1972), because the cause of action did not conform to any of the common-law causes of action set out in the other Mississippi periods of limitation. Plaintiffs were apparently correct in relying on the six-year statute of limitations "[b]ecause Mississippi has no statute of limitations designed to cover actions seeking redress for the tort of employment discrimination, [thus] the State's catch-all statute is applicable." *Truvillion, supra,* at 528 (citations omitted). While there is authority to support application of the one-year statute for contractual claims to Section 1981 claims for discriminatory terminations, *Breland v. Board of Education of Perry County,* 729 F.2d 360 (5th Cir.1984), plaintiffs' "complaint sounds in tort, not in contract." *Truvillion, supra,* at 528 (citing *Ingram v. Steven Robert Corp.,* 547 F.2d 1260, 1263 (5th Cir.1977)).

Prior to *Wilson,* the Fifth Circuit had apparently not applied the one-year statute for tort claims, Miss.Code Ann. § 15–1–35, to Section 1981 actions. There was no clear prior precedent, however, permitting any reliance or expectation by the plaintiffs that the six-year statute would necessarily

---

7. The three-year statute was amended in 1976 to a one-year limitation for actions based on un-

written contracts of employment. Miss.Code Ann. § 15–1–29 (Supp.1987).

be applied.[8] Cases arising under Section 1981 had been decided under both the six-year and the three-year statutes of limitation in Mississippi. Thus, plaintiffs cannot show that the application of the one-year statute urged by the defendants would represent an overruling of clear prior precedent on which they were entitled to rely.

As a secondary argument, plaintiffs contend that application of the one-year statute to bar their claims would constitute a decision on "an issue of first impression whose resolution was not clearly foreshadowed...." *Chevron Oil Co., supra*, at 106, 92 S.Ct. at 355. The basis for this argument is plaintiffs' assertion that it could not possibly have been predicted in 1967 (when the alleged discrimination took place) or at any other time prior to *Goodman*, that an ordinary Section 1981 employment discrimination claim would be governed by the one-year period of limitation for intentional torts set forth in Miss. Code Ann. § 15–1–35 (1972). The court is not persuaded that plaintiffs had no basis whatsoever for predicting that a single statute might eventually be selected for all Section 1981 claims, especially since the Fifth Circuit had previously applied both the six-year and the one-year statute and there was a discernible need to resolve this inconsistency. *Compare Breland, supra,* (applying one-year statute) *with Truvillion, supra* (applying six-year statute). Nevertheless, the court will accept without deciding that plaintiffs have made an adequate showing under the first criterion of the *Chevron Oil Co.* analysis that the decision to apply Mississippi's one-year statute of limitations to all Section 1981 claims would signify a departure from prior precedent on which plaintiffs were entitled to rely.

**2. Whether Retroactive Application Would be Inconsistent With the Purposes of the Under–Lying Substantive Law**

This principle requires the court to consider whether retroactive application of the new rule of decision will further the purposes of the underlying substantive law to which the new rule applies. The purpose of Section 1983 claims is to permit recovery of damages for tort claims involving personal injuries. *Wilson, supra,* 471 U.S. at 276, 105 S.Ct. at 1947. The Supreme Court, in deciding *Wilson,* sought to achieve uniformity and to prevent needless litigation over the statute of limitations applicable to Section 1983 claims occasioned by a case-by-case approach to this question. *Id.* at 275, 105 S.Ct. at 1947. Similarly, the purpose of Section 1981 claims is to provide a remedy or redress for alleged instances of racially-motivated discrimination. Applying *Wilson's* analysis to all Section 1981 claims would likewise prevent needless waste of judicial effort and resources "by useless litigation on collateral matters." *Wilson, supra,* at 275, 105 S.Ct. at 1947.

In the case *sub judice,* the court finds that the second aspect of the *Chevron Oil Co.* test militates in favor of applying the one-year statute to all Section 1981 claims. The uniformity of a single statute of limitations would, in the opinion of the court, provide clearly needed certainty in this area and would ultimately conserve scarce judicial resources along with the time and effort of litigants.[9]

**3. Whether Retroactive Application Would Produce Inequitable Results**

Since retroactive application of the one-year statute would bar plaintiffs' claim, they predictably argue that retroactivity in

---

**8.** The court also agrees with defendants' argument that plaintiffs had no reason to expect the three-year statute to apply when the only indication that it might was embedded in a footnote in a Louisiana case. *Boudreaux v. Baton Rouge Marine Contracting Co.,* 437 F.2d 1011, 1017 n. 16 (5th Cir.1971). Additionally, the Supreme Court's allusion in *Goodman* that Section 1981 has a "broader focus than contractual rights", *id.* —— U.S. ——, 107 S.Ct. at 2621, 96 L.Ed.2d at

582, suggests to the court that the six-year statute was probably the appropriate pre-*Wilson* precedent for these plaintiffs' claims.

**9.** Undeniably, the rationale behind statutes of limitation includes a concern for certainty and finality of decision, which a single statute for all civil rights actions would help to achieve.

this case would clearly produce inequitable results. Plaintiffs also suggest, interestingly, that this case has been litigated for almost 15 years and that retroactive application of a new statute of limitations at this juncture would also be inequitable on that basis.

The court states once again that this case and *Payne* are not synonymous. While the *Payne* action has been in litigation for 15 years, the *Byrd* plaintiffs were not original plaintiffs in *Payne* and did not initiate this action until 1983. In any event, the court agrees that the retroactive application of the one-year statute of limitations would unfairly deny plaintiffs any remedy on the basis of a superseding legal doctrine which was not entirely foreseeable when they initiated this action. *See Chevron Oil Co., supra,* at 108, 92 S.Ct. at 356.

The court is also compelled to quote the Fifth Circuit's most recent pronouncement on the retroactive application of *Wilson* to Section 1983 actions:

> We therefore hold that for Mississippi section 1983 actions accruing before *Wilson* that would clearly have enjoyed a longer than one-year limitations period under applicable pre-*Wilson* precedent, the appropriate limitations period shall be either (1) the longer pre-*Wilson* period, commencing at the time the action accrued, or (2) the post-*Wilson* one-year period, commencing with the date of the *Wilson* decision, whichever expires first.

*Hanner v. State of Mississippi,* 833 F.2d 55, 59 (5th Cir.1987). The court is of the opinion that when the appropriate case presents itself, the Fifth Circuit will likely apply this same reasoning to Section 1981 actions in compliance with the Supreme Court's decisions in *Goodman* and *Saint Francis College.*

Construing the "time the action accrued" in this matter to have been the Supreme Court's denial of certiorari in 1978, the court concludes once again that plaintiffs' Section 1981 claims were timely filed. Accordingly, the defendants' renewed motion to dismiss the plaintiffs' Section 1981 claims on statute of limitations grounds is not well taken and will be denied.

### C. Plaintiffs' Motion to Consolidate

When they filed their complaint in 1983, plaintiffs sought to consolidate this matter with *Payne.* Defendants have recently responded to the plaintiffs' motion and the court now holds that the motion is not well-taken and should be denied.

Rule 42(a) of the Federal Rules of Civil Procedure provides that: "When actions involving a common question of law or fact are pending before the court ... it may order all the actions consolidated...." The primary ground for plaintiffs' motion is their assertion that this action concerns the "identical questions of fact and of law which are involved in *Payne.*" Plaintiffs' Motion at 2. The court directs the parties' attention to the fact that *Payne* involves Title VII claims, while the only remaining claims in the case at bar are Section 1981 actions.

In ruling on a motion to consolidate, the court has broad discretion. *N.A.A.C.P. of Louisiana v. Michot,* 480 F.2d 547, 548 (5th Cir.1973). The decision to consolidate a case which has been in litigation for over 15 years with one initiated only four years ago would not convey the impression of a proper exercise of sound judicial discretion. *Cf. St. Bernard General Hospital v. Hospital Service Association of New Orleans, Inc.,* 712 F.2d 978 (5th Cir.1983), *cert. denied,* 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 816 (1984).

The defendants in this action did not file their answer until November 12, 1987. The *Payne* litigation is, as defendants remind the court, difficult and complex enough on its own. *Payne* has already been tried on the liability issue and has been before the Fifth Circuit on appeal twice. Consolidation at this advanced stage of the *Payne* case would do little in the way of promoting judicial economy. Accordingly, the plaintiffs' motion to consolidate will be denied.

A separate order consistent with this opinion will issue.